**Stephen Manning**, OSB No. 013373
stephen@innovationlawlab.org
**Jordan Cunnings**, OSB No. 182928
jordan@innovationlawlab.org
**Rachel Landry**, MA Bar No. 713320*
rachel@innovationlawlab.org
Innovation Law Lab
333 SW 5th Ave., Suite 200
Portland, OR 97204
Telephone: (503) 922-3042

*pro hac vice application forthcoming*

*Attorneys for Plaintiff Innovation Law Lab*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| INNOVATION LAW LAB, | Case No. 3:26-cv-01382 |
| Plaintiff, | |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. COAST GUARD, U.S. FISH & WILDLIFE SERVICE | |
| Defendants. | |

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*., seeking to compel Defendants U.S. Immigration and Customs Enforcement (ICE), U.S. Coast Guard (USCG), and U.S. Fish and Wildlife Service (FWS) to immediately release records concerning ICE's project to construct or transform facilities for the purposes of overnight immigration detention in the state of Oregon ("the Oregon Detention Project").

2.      On information and belief, ICE is planning to build or transform facilities for overnight detention in Oregon and has considered areas in or around the City of Newport, the area of North Bend, the city of Warrenton, and the Portland area, including Defendant USCG sites.

3.      Yet, ICE has shielded its plans for the Oregon Detention Project from the public. What *is* known about ICE's Oregon Detention Project, including USCG's involvement, has been revealed through investigative journalism, records requests, legal action, and inquiry from congressional officials.

4.      This action concerns three FOIA requests submitted by Plaintiff Innovation Law Lab (Law Lab) seeking to vindicate the public's right to information about Defendant ICE's Oregon Detention Project in the custody of Defendant ICE, USCG, and FWS.

**ICE FOIA Request**

5.      On January 6, 2026, Law Lab submitted a FOIA request to Defendant ICE requesting all records, including correspondence, solicitations, policy documents, and guidance, whether formal or informal, regarding ICE's plans for overnight immigration detention in the State of Oregon from February 1, 2025 through the date of fulfillment of the request ("ICE FOIA Request"). Exhibit A, FOIA Request to ICE (Jan. 6, 2026). Law Lab sought expedited processing of its request.

6.      On January 13, 2026, Defendant ICE denied Law Lab's request for expedited

1

Compl. for Declaratory & Injunctive Relief

treatment of the ICE FOIA request and invoked a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). Exhibit B, ICE Acknowledgement Letter & Expedited Processing Denial (Jan. 13, 2026). Law Lab timely appealed the denial of its expedited processing request. Exhibit C, Law Lab Appeal to ICE (Jan 14, 2026). On February 12, 2026, ICE affirmed its decision to deny Law Lab's request for expedited processing. Exhibit D, ICE Appeal Response (Feb. 12, 2026).

7.      It has now been more than six months since Law Lab submitted its FOIA Request to ICE, and ICE has yet to produce a single record, much less a final response.

### U.S. Fish and Wildlife Service

8.      On January 15, 2026, Law Lab submitted a FOIA Request to Defendant FWS seeking records related to ICE's project to construct or transform facilities for the purposes of overnight immigration detention in the state of Oregon, including but not limited to environmental reviews under Section 7 of the Endangered Species Act and correspondence between FWS and ICE and ("FWS FOIA Request"). Exhibit E, FOIA Request to FWS (Jan. 15, 2026). Law Lab sought expedited processing of its request.

9.      Also on January 15, 2026, Law Lab received confirmation that Defendant FWS received the FOIA Request to FWS. Exhibit F, FWS Letter Acknowledging Receipt (Jan. 15, 2026).

10.      On March 3, 2026, Law Lab received a status update that the FWS FOIA Request was "On Hold – Other." Exhibit G, FWS Status Update Letter (March 3, 2026).

11.      On June 26, 2026, FWS denied Law Lab's request for expedited treatment of the FWS FOIA Request. Exhibit K, FWS Expedited Processing Denial (June 6, 2026). Law Lab timely appealed the denial of its expedited processing request. Exhibit L, Law Lab Appeal to FWS (July 8, 2026).

Compl. for Declaratory & Injunctive Relief

12.    It has now been nearly six months since Law Lab submitted its FOIA Request to FWS, and FWS has yet to produce a single record, much less a final response.

**U.S. Coast Guard FOIA Request**

13.    On February 25, 2026, Law Lab submitted a FOIA Request to Defendant USCG seeking all records, including correspondence, policy documents and guidance, whether formal or informal, regarding the U.S. Coast Guard's coordination and cooperation with ICE for overnight detention in the state of Oregon ("USCG FOIA Request"). Exhibit H, FOIA Request to USCG (Jan. 27, 2026).[1] Law Lab sought expedited processing of its request.

14.    It has been more than four months since Law Lab submitted its FOIA Request to USCG, and USCG has yet to produce a single record, much less a final response.

***

15.    It has been at least four months since Plaintiff filed its FOIA requests with Defendants ICE, FWS, and USCG. Despite their statutory obligation to do so, Defendants have failed to issue determinations or produce records to Plaintiff. Defendants also failed to make a timely determination on Plaintiff's request for a fee waiver. Defendants ICE and FWS have erroneously denied Plaintiff's request for expedited processing; the failure of Defendant USCG to make a timely determination amounts to constructive denial of the expedited processing request.

16.    Plaintiff is entitled to a judgment declaring that Defendants ICE, FWS, and USCG have violated FOIA and ordering Defendants to release responsive records related to the Oregon Detention Project and granting Plaintiff's fee waiver requests. Plaintiff is also entitled to an order requiring Defendants ICE and USCG to grant Plaintiff's expedited processing requests.

---

[1] Plaintiff submitted its original FOIA request to Defendant USCG on January 7, 2026. *See* Exhibit I, Original FOIA Request to USCG (Jan. 7, 2026). Following Defendants' request for resubmission, *see* Exhibit J, USCG Acknowledgement Letter (Jan. 27, 2026), Plaintiff revised and resubmitted its request on February 25, 2026.

3

Compl. for Declaratory & Injunctive Relief

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction under 5 U.S.C. § 552 *et seq.* (FOIA statute) and 28 U.S.C. § 1331 (federal question). This Court has jurisdiction to grant declaratory, injunctive, and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

18.     Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are federal agencies, there is no real property involved in this action, and Plaintiff has its principal place of business in this District. Divisional venue is proper under Local Rule 3-2 because a substantial part of the events or omissions giving rise to the claim occurred in this division.

## PARTIES

19.     Plaintiff Innovation Law Lab is a tax-exempt, not-for-profit charitable organization under section 501(c)(3) of the Internal Revenue Code, with a principal place of business in Portland, Oregon. Founded in 2014, Innovation Law Lab leverages law, technology, and organizing to advance immigrant and refugee rights. Innovation Law Lab's work includes representing noncitizens in their immigration cases, defending immigrant Oregonians' rights in federal court, and developing public-facing resources to educate and empower community members.

20.     Defendant ICE is a component agency of DHS and is the federal agency primarily responsible for criminal and civil enforcement of U.S. immigration laws, including the apprehension, incarceration, and removal of noncitizens from the United States. Among ICE's duties is the management of its vast network of immigration detention centers. ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has control over the records Plaintiff seeks in the ICE FOIA Request.

4

Compl. for Declaratory & Injunctive Relief

21.     Defendant FWS is a component agency of the Department of the Interior ("DOI") and is the federal agency primarily responsible for the conservation and management of fish, wildlife, plants and their habitats for the American people. FWS is primarily responsible for administering Section 7 of the Endangered Species Act for terrestrial and freshwater species. FWS is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has control over the records Plaintiff seeks in the FWS FOIA Request.

22.     Defendant USCG is a component agency of DHS and is the federal agency primarily responsible for ensuring the United States' maritime safety, security, and stewardship. Defendant USCG has multiple stations in Oregon, including: (i) Air Station Astoria in Warrenton; (ii) Air Station North Bend in North Bend; (iii) the Air Facility at the Newport Municipal Airport in Newport ("AIRFAC Newport"); and (iv) the U.S. Coast Guard Station Portland in Portland. USCG is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has control over the records Plaintiff seeks in the USCG FOIA Request.

## FACTUAL ALLEGATIONS

### ICE's Oregon Detention Project

23.     There is currently no site for overnight immigration detention in the state of Oregon and there hasn't been for years. In 2017, the Northern Oregon Regional Correction Facility ("NORCOR") started detaining individuals for the purposes of federal immigration detention in violation of Oregon's 1987 sanctuary law, but ICE detention at NORCOR ended in 2020 after years of persistent community organizing and legal battles. In 2018, ICE detained more than 120 asylum seekers at the federal prison in Sheridan, and the community organized and went to court until every single asylum seeker was released. Since early 2025, Defendant ICE has been planning to once again detain people overnight in the state of Oregon.

Compl. for Declaratory & Injunctive Relief

24.     On January 20, 2025, President Donald Trump issued several executive actions relating to immigration, including "Protecting the American People Against Invasion," an executive order ("EO") setting out a series of interior immigration enforcement actions. The Trump administration, through this and other actions, has outlined and enacted sweeping, executive branch-led changes to immigration enforcement policy, establishing a formal framework for mass deportation. The "Protecting the American People Against Invasion" EO instructs the DHS Secretary "to take all appropriate action to enable" ICE to prioritize civil immigration enforcement procedures including through the use of mass detention.

25.     One month into the Trump Administration's second term, The New York Times reported that the new administration was "ramping up plans to detain undocumented immigrants at military sites across the United States."[2] The now-notoriously dangerous and inhumane Camp East Montana at Fort Bliss in El Paso, Texas[3] would serve as a model for expanded detention at military bases nationwide, including in Oregon.[4]

26.     Defendant ICE's decision-making and planning for overnight detention in Oregon is happening out of sight, without transparency or public opportunity to weigh in.

27.     Beginning in November 2025, state and local news outlets began reporting that ICE was planning for overnight detention along the Oregon coast, including in or around the Newport

---

[2] Zolan Kanno-Youngs et al., Trump Plans to Use Military Sites Across the Country to Detain Undocumented Immigrants, The New York Times (Feb. 21, 2025), https://www.nytimes.com/2025/02/21/us/politics/migrants-military-sites.html (last visited July 1, 2026).

[3] See, e.g. ACLU et al., Letter to ICE Acting Director Todd Lyons, ICE El Paso Field Office Director Joel Garcia, Commanding General, Major General Curtis Taylor, and Garrison Commander, Col. Michael V. Soyka (Dec. 8, 2025), https://www.aclu.org/documents/ice-letter-re-fort-bliss.

[4] Kanno-Youngs et al., supra note 2.

6

Compl. for Declaratory & Injunctive Relief

Municipal Airport, in the city of Newport.[5] While ICE made plans behind closed doors, reporters and elected officials gathered and reported out information as it was uncovered.

28. On October 30, 2025, Defendant USCG relocated a search and rescue helicopter from a USCG Air Facility Newport ("AIRFAC Newport") at the Newport Municipal Airport to North Bend, without any public warning or rationale. The following day, on October 31, 2025, Defendant ICE toured Defendant Coast Guard's AIRFAC Newport for the purposes of building temporary, soft-sided tent structures for overnight detention.[6]

29. According to a transcript obtained by the news outlet NOTUS, ICE acknowledged during this tour that the space is a "small area." In response to concerns about the size of the facility, government officials told potential contractors that they may waive certain National Detention Standards to keep the detention project moving forward.

30. The government also indicated *both* that most people detained at AIRFAC Newport would be detained for less than 72 hours in order to avoid triggering requirements for higher national standards of care and that "stays may extend up to 10 days."[7] ICE was planning to have

---

[5] *See, e.g.*, Shaanth Nanguneri, Military housing contractor sought Newport airport lease site before ICE facility reports, Oregon Capital Chronicle (Nov. 11, 2025 5:58 PM), https://oregoncapitalchronicle.com/2025/11/11/military-housing-contractor-sought-newport-airport-lease-site-before-ice-facility-reports/ (last accessed July 1, 2026);
Zane Sparling, "We are going to fight": Newport among sites mulled for ICE facility, city says, Oregon Live (last updated Nov. 14, 2025 9:42 AM), https://www.oregonlive.com/politics/2025/11/we-are-going-to-fight-newport-among-sites-mulled-for-ice-facility-city-says.html (last accessed July 1, 2026);
Dirk VanderHart, With ICE (maybe) waiting in the wings, Newport sits in limbo, OPB (Nov. 24, 2025 1:59 PM), https://www.opb.org/article/2025/11/24/ice-newport-helicopter-immigration-detention-center-oregon/;
Dirk VanderHart, A federal defense contractor is seeking hundreds of coastal Oregon hotel rooms, city of Newport says, OPB (Nov. 25, 2025 6:28 PM), https://www.opb.org/article/2025/11/25/federal-defense-contractor-hotel-rooms-newport/.
[6] Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard.
[7] Giorno & Llanos, *supra* note 6.

7

Compl. for Declaratory & Injunctive Relief

ICE Air Flights pick detained individuals up directly from this new site of detention.

31.    While federal agencies typically post solicitations for contracts publicly on SAM.gov, ICE's solicitation for contractors for overnight detention at or near AIRFAC Newport were issued directly to already vetted vendors through Worldwide Expeditionary Multiple Award Contract 2.1—keeping the process out of the public eye.[8]

32.    A November 4, 2025 letter of intent from Team Housing Solutions, Inc., to the Newport City Manager stated the company's interest in leasing a 4.3 acre parcel of land at the Newport Municipal Airport beginning on December 1, 2025, including for "operational staging in support of the federal project," "placement of temporary facilities, including mobile office trailers and storage containers," and "installation of a 12-foot security fence around the leased area for controlled access[.]"[9] A few days later, a local septic company was asked to provide an estimate for a pumping 5,000 to 10,000 gallons of sewage a day for three years for a federal project in Newport.[10] Government contractors Acuity International and Asset Protection & Security Services also posted job opening for detention, clinical and transport officers.[11]

33.    On November 10, 2025, the city of Newport released a statement that "City of Newport officials were made aware of information that the US Department of Homeland Security (DHS) is in the process of evaluating locations along the Oregon coast for a potential U.S. Customs

---

[8] Giorno & Llanos, *supra* note 6.

[9] William Cavanaugh, Letter of Intent to Lease Airport Property, Team Housing Solutions (Nov. 4, 2025) https://www.documentcloud.org/documents/26222726-loi-to-lease-airport-land-newport-ordocx-1/.

[10] *See* Shayla Escudero, Newport officials announce that request to lease airport land for possible immigration detention center is withdrawn, Lincoln Chronicle (Nov. 12, 2025) https://lincolnchronicle.org/evidence-mounts-for-possible-immigration-detention-center-in-newport-as-two-companies-advertise-for-work-there/ (last accessed July 1, 2026).

[11] *See, e.g.*, Shaanth Nanguneri, Federal defense contractor backs out of potential Oregon Coast ICE Facility, Oregon Capital Chronicle (Nov. 12, 2025) https://oregoncapitalchronicle.com/2025/11/12/defense-contractor-backs-out-of-potential-oregon-coast-ice-facility/ (last accessed July 1, 2026).

Compl. for Declaratory & Injunctive Relief

and Immigration Enforcement (ICE) immigration facility, and the Newport Municipal Airport has been identified as a possible location for this facility." The Newport Mayor Jan Kaplan stated that: "I am deeply concerned by recent reports suggesting that Newport may be under consideration for an ICE detention facility. . . . We are committed to uphold fairness and dignity for all who call Newport home. Any proposal that has the potential to impact those principles deserves transparency, public input, and a thorough review of potential social and economic consequences." The city also announced an open public meeting at the Newport City townhall on Wednesday, November 12, 2025.[12]

34.    On November 11, 2025, Oregon State Representative Daivd Gomberg published a news update that: "We are now aware there are persistent rumors and reports the ICE is in the process of expanding operations near the Newport Municipal Airport in space that has been deeded to the Coast Guard. Predictably, the federal agencies that actually know something are not saying. . . . What I do know is that reports indicate the proposed siting of a new ICE detention facility in the Newport area. We are aware that our local Coast Guard helicopter has been relocated to North Bend, and that is disturbing. Information beyond that is scarce at this time."[13]

35.    On November 12, 2025, Team Housing Solutions, Inc., withdrew its letter of intent to lease land at the Newport Municipal Airport. That same day, the Lincoln Chronicle reported that "at least two companies are advertising to hire officers and a medical team to work at a possible federal immigration" ad that in a statement to the Lincoln Chronicle, DHS said it was bringing

[12] City of Newport Announcement on the US Department of Homeland Security Evaluating Locations Along the Oregon Coast, https://www.newportoregon.gov/news_detail_T37_R95.php (last accessed July 1, 2026).
[13] Or. Rep. David Gomberg, NEWS UPDATE FROM STATE REPRESENTATIVE DAVID GOMBERG: Addressing the ICE Rumors in Our Community, Tillamook County Pioneer (Nov. 11, 2025), https://www.tillamookcountypioneer.net/news-update-from-state-representative-david-gomberg-addressing-the-ice-rumors-in-our-community/ (last accessed July 2, 2026).

9

Compl. for Declaratory & Injunctive Relief

"cost-effective detention spaces" at "turbo speed."

36.    Also on November 12, 2025, over 800 people showed up at Newport City Hall to attend a city council meeting on the possibility of an ICE detention center at the Newport Municipal Airport.[14] At the meeting, the attendees and city councilors unanimously opposed ICE overnight detention in their community.[15]

37.    The same day, four members of the Oregon congressional delegation, Senators Wyden and Merkley and Representatives Bonamici and Hoyle, sent a letter to DHS Secretary Noem, in which they stated: "We urge you to immediately provide the Oregon congressional delegation and state and local officials with a clear explanation of DHS's actions and intentions in Newport." In their letter, members of the congressional delegation asked for more information about DHS and ICE's plans for an ICE detention facility in Newport and shared the widespread concern about such a possibility in the Newport community: "Newport residents and small business owners remain extremely concerned about the social and economic consequences that will result from ICE enhancing its presence in the town and the surrounding areas."[16]

38.    On November 20, 2025, Solv, LLC, an environmental services company and government contractor, emailed Oregon officials in the Oregon Department of Land Conversation and Development about a "proposed action" that would involve a "federal consistency

---

[14] Escudero, *supra* note 10; Victor Park, Tears, frustration and fear from 800+ attending meeting on potential ICE facility, KATU (last updated Nov. 13, 2025), https://katu.com/news/local/community-to-address-newport-city-council-leaders-potential-immigration-customs-enforcement-ice-detention-center-municipal-airport.
[15] Park, *supra* note 14.
[16] Letter from Sen. Ron Wyden et al., to DHS Secretary Kristi Noem 1 (Nov. 12, 2025), https://www.wyden.senate.gov/imo/media/doc/letter_to_dhs_re_coast_guard_and_ice_activities_in_newport_111225.pdf.

10

Compl. for Declaratory & Injunctive Relief

determination" under the Coastal Zone Management Act.[17]

39. On November 25, 2025, Mayor Jay Kaplan, updated the public in an Instagram video that as recently as that morning, federal contractor Team Housing Solutions inquired with local hotels about securing at least 200 rooms per year. The city of Newport was aware of 18 job postings for the planned ICE detention facility and regular inquiries to local companies about the removal of water and sewage. As of November 25, DHS had not communicated with the city of Newport.[18]

40. Newport is not the only location that Defendant ICE has been considering for overnight detention in Oregon. On December 2, 2025, federal contractor Acuity International posted job listings for positions in Portland for warden, assistant warden, security manager, quality assurance manager, unarmed guard supervisor and assistant operations manager. The job descriptions for the managerial roles described them as "overseeing the daily operational functions of an ICE detention facility."[19] On Indeed.com, the "warden/facility" director position listed the location as "7000 NE Airport Way, Portland, OR 97218"—the location of the Portland International Airport.[20]

41. On December 15, 2025, seven members of Oregon's congressional delegation, led

---

[17] Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM), https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/ (last accessed July 2, 2026).

[18] City of Newport, OR (@cityofnewportore), Instagram (Nov. 25, 2025), https://www.instagram.com/p/DRflqxqkzyy/.

[19] Kyle Iboshi, ICE detention center planned for Portland, job postings hint, KGW.com (Dec. 4, 2025 6:11 PM PST), https://www.kgw.com/article/news/investigations/ice-detention-center-planned-portland-job-postings-hint/283-72094019-476f-4f43-a7ef-75731cbea9aa (last accessed July 2, 2026).

[20] Warden/Facility Director – Notional Job Posting by Acuity International, Indeed.com, https://www.indeed.com/viewjob?jk=ddb47dea0a9c80a1&from=searchOnDesktopSerp%252Cw hereautocomplete&tk=1jqpcm2q3gcuq800 (last visited July 2, 2026).

11

Compl. for Declaratory & Injunctive Relief

by Senator Jeff Merkley sent a letter to DHS Secretary Noem and Acting ICE Director Lyons: "We write to request a full and detailed description of any plans to open or expand Immigration and Customs Enforcement (ICE) detention facilities in Oregon." The members of congress stated that the information "is critical to support Congress's responsibility to protect detaine[d individuals]'s bedrock human and legal rights" and called attention to the "record of abuse" in facilities like Alligator Alcatraz and concerns about the lack of access to counsel for Oregonians in ICE detention.[21]

42.     Also in December 2025, Defendant U.S. Coast Guard's Captain Kent Reinhold acknowledged during a sworn deposition that internal discussions had begun regarding overnight detention at AIRFAC Newport.[22]

43.     On December 19, 2025, the State of Oregon amended its ongoing lawsuit regarding the removal of the USCG helicopter from AIRFAC Newport to include allegations regarding DHS, ICE and the USCG's plans for overnight detention in Oregon: "Alongside their unlawful efforts to reassign the rescue helicopter, Defendants have been furtively working to transform the Newport Municipal Airport into an ICE detention facility. Defendants have engaged in these efforts behind closed doors, with no transparency or public process, ignoring direct requests for information from local officials and members of Congress. As a result, the State has been forced to piece together Defendants' plans for the ICE detention facility based on public reporting, inquiries to and information from federal contractors, the second-hand account of a U.S. Coast Guard witness, and related evidence." First Amended Complaint, *State of Oregon v. Noem et al.*,

---

[21] Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf

[22] Dirk VanderHart, Oregon asks judge to block potential ICE detention center in Newport, OPB (Dec. 19, 2025, 5:15 PM) https://www.klcc.org/politics-government/2025-12-19/oregon-asks-judge-to-block-potential-ice-detention-center-in-newport (last accessed July 2, 2026).

Compl. for Declaratory & Injunctive Relief

6:25-cv-02172-AA, ECF No. 47 ¶ 7 (D. Or. Dec. 19, 2025).[23]

44.     On December 22, 2025, the City of Newport sued then-DHS Secretary Noem, then-Acting ICE Director Todd Lyons, Acting Commandant of the USCG Admiral Kevin Lunday, DHS and ICE alleging that "[w]ith complete disregard for" Newport's resident's, small-town infrastructure, and unique climate and environment, and "without providing any opportunity for input from the public, Defendants have decided to fund, construct, and maintain a massive immigration detention and deportation facility in Newport[.]" Complaint, *City of Newport v. Noem et al.*, Case No. 6:25-cv-2396, ECF No. 1 ¶ 5 (D. Or. Dec. 22, 2025). The complaint emphasized that "Defendants' hasty decision to build a detention facility in Newport" was "being implemented in secret[.]" *Id.* ¶ 9. Litigation in the now-consolidated lawsuits brought by the City of Newport and the State of Oregon challenging ICE's plans for overnight detention in Newport is ongoing.

45.     On February 12, 2026, Representative Andrea Salinas led seventeen members of Congress in sending a letter to then-DHS Secretary Noem and Acting ICE Director Lyons expressing "deep concern and strong opposition to any plans to open or expand Immigration and Customs Enforcement (ICE) detention facilities in Oregon." The letter's signatories expressed their "particular concern about the promulgation of 'soft-sided' ICE detention facilities and any plans to repurpose existing structures with the goal of rapidly expanding the number of detention facilities in Oregon and across the country." They requested "detailed information on plans or communications regarding the development of immigration detention facilities in Oregon."[24]

46.     On February 28, 2026, Hoodline reported that "federal contractors quietly scoped

---

[23] The challenge to the ICE detention facility in Newport has since been severed from litigation regarding the rescue helicopter and is now proceeding at Case No. 6:26-cv-00186.
[24] Letter from Rep. Andrea Salinas et al. to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Feb. 12, 2026), available at: https://salinas.house.gov/sites/evo-subsites/salinas.house.gov/files/evo-media-document/salinas-and-merkley_oregon-ice-detention-center_signed_2-12-26.pdf.

Compl. for Declaratory & Injunctive Relief

out Lakeside [a town in Coos County] as a potential site for a U.S. Immigration and Customs Enforcement detention camp." The Coos County community resoundingly opposed this possibility.

47.    On March 20, 2026, ICE published a solicitation for contracts on Sam.gov for co-working space for over 300 staff worldwide, including in Oregon.[25]

48.    On March 26, 2026, then-Acting ICE Director Todd Lyons replied to Representative Salinas's congressional letter stating that "ICE is exploring various options to increase bedspace capacity nationwide working in collaboration with federal partners such as the U.S. Marshals Service, the Department of War, and the Bureau of Prisons." Acting Director Lyons also stated that "ICE is not currently planning to expand current detention facilities or open any new long or short-term detention facilities in Oregon."[26]

49.    On May 1, 2026, ICE published an amendment to its solicitation for contracts on Sam.gov for co-working space.[27] In Oregon, ICE solicited for office space for two employees in Portland, OR and one employee in Roseburg, OR for the performance period of June 1, 2027 to May 31, 2028.

50.    Defendant ICE's project to build or transform facilities for overnight immigration detention in Oregon is occurring largely outside the public eye, with most information trickling out to the public through investigative journalism, public records requests, legal action, and

---

[25] Private Office Space Rental/Workstations for ICE Personnel (Notice ID 70CMSW-033126), Sam.gov (Mar. 20, 2026 2:48 PM EDT), https://sam.gov/workspace/contract/opp/cd2387430870412eb0713efd2441ce89/view.
[26] Letter from Todd M. Lyons to the Honorable Andrea Salinas (March 26, 2026), available at https://salinas.house.gov/sites/evo-subsites/salinas.house.gov/files/evo-media-document/26-01462-rep-salinas-response-3.26.26-1.pdf.
[27] Private Office Space Rental/Workstations for ICE Personnel Amendment (Notice ID 70CM-SW26Q00000009),    Sam.gov    (May    1,    2026    2:13    PM    EDT), https://sam.gov/workspace/contract/opp/362c77debf2947b4be02b3275e1bbc2f/view.

14

Compl. for Declaratory & Injunctive Relief

inquiries from elected officials.

## Section 7 of the Endangered Species Act

51.    Under Section 7 of the Endangered Species Act ("ESA") (codified at 16 U.S.C. § 1536), every single federal agency, including Defendant ICE, is required to "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the consideration of endangered and threatened species[.]" 16 U.S.C. § 1536 (a)(1).

52.    As part of this affirmative duty under the ESA, every single agency, including Defendant ICE, "shall, in consultation with the assistance of the Secretary [of the Interior or Commerce] insure that *any action authorized, funded, or carried out* by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species[.]" 16 U.S.C. § 1536(a)(2) (emphasis added).

53.    The Secretary of the Interior is the primary official responsible for carrying out the ESA, and its duty is delegated to Defendant FWS, the agency responsible for overseeing terrestrial and freshwater wildlife.

## Plaintiff's FOIA Requests to Defendants ICE, FWS, and USCGO

### *ICE FOIA Request*

54.    On January 6, 2026, Law Lab submitted the ICE FOIA Request to Defendant ICE using the electronic SecureRelease portal provided by Defendant ICE. *See* Ex. A.

55.    The request sought disclosure of all records, including correspondence, solicitations, policy documents, and guidance, whether formal or informal, created since February 1, 2025 through the fulfillment of the request, regarding ICE's plans for overnight immigration detention in the state of Oregon. Specifically, the request sought records, including but not limited to:

15

Compl. for Declaratory & Injunctive Relief

- Solicitations for contractors related to the operation  of a detention center in the state of Oregon, including but not limited to at or around (i) the Newport Municipal Airport in the City of Newport; (ii) the area of North Bend; (iii) the area of Warrenton; and (iv) the Portland area, including near the Port of Portland or the Portland Airport; and including requests for proposals through the Worldwide Expeditionary Multiple Award Contract 2.1;

- All documents submitted in response to solicitations for contractors related to the operation of a detention center in Oregon as described above;

- Records related to or reflecting correspondence and communications (including emails and attachments) regarding plans for federal immigration detention centers in Oregon, including:

  - between ICE and the U.S. military, including the U.S. Coast Guard;
  - between ICE and federal contractors;
  - between ICE and the Department of Homeland Security ("DHS");
  - internally within ICE;

- Job postings, documents, and communications, regarding the hiring of staff, including federally contracted staff, for the purposes of immigration detention in the state of Oregon, including but not limited to a project manager environmental scientist;

- Documents, including correspondence, meeting agendas, meeting minutes, and transcripts related to October 31, 2025 meeting at the Newport Municipal Airport regarding converting the property to an ICE detention facility.

Ex. A at 1-2.

56.    Plaintiff sought expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). Plaintiff attached a statement from Isaura Pena in support of its request for expedited processing. *See Id.* at 8-11.

57.    Ms. Pena's certified statement explained that the ICE FOIA Request involves:

(i) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) an urgency to inform the public about an actual or alleged federal government activity; (iii) the loss of substantial due process rights; and (iv) a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

*Id.* at 8.

Compl. for Declaratory & Injunctive Relief

58.     First, Ms. Pena explained the need for expedited processing because the lack therefore "could reasonably be expected to pose an imminent threat to the life or physical safety of individuals in custody at an overnight detention center and the surrounding community." Ms. Pena cited to news reporting and statements from members of Congress raising concerns about the environmental and weather conditions at and near the Newport Municipal Airport in the city of Newport, including gale-force winds, heavy rainfall, flooding, cold weather, and the risk of tsunami. *Id.* at 8-9.

59.     Second, Ms. Pena explained the need for expedited processing because there is an urgency to inform the public, citing to numerous news articles about "what little is publicly known about the federal government's plans to begin overnight immigration detention in Oregon" and letters from elected officials to ICE "requesting more information and express[ing] concern about ICE's reported plans[.]" *Id.* at 9-10.

60.     Third, Ms. Pena justified the need for expedited processing because the ICE FOIA request involves "an issue implicating the loss of substantial due process rights" where "detention at military sites raises substantial due process concerns, including the denial of access to the U.S. immigration process, coerced deportation despite fear of removal to a third country, and the deprivation of legal resources like access to counsel." *Id.* at 10-11.

61.     Finally, Ms. Pena further justified the need for expedited processing because the request involves a matter of widespread and exceptional media interest, explaining that "numerous news outlets have demonstrated substantial and persistent interest in the U.S. Government's plans for immigration detention facilities in Oregon" and citing to multiple news articles. *Id.* at 11.

62.     Plaintiff asked Defendant ICE to waive all fees associated with the request under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) "because disclosure is 'likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester' and Innovation Law Lab does not seek the

17

Compl. for Declaratory & Injunctive Relief

[records] for a commercial purpose." Ex. A at 3 (citing 5 U.S.C. § 552(a)(4)(A)(iii)).

63.     By email dated January 13, 2026, Defendant ICE acknowledged receipt of the ICE FOIA Request, assigned the request case number 2026-ICFO-10513, invoked the 10-day extension under 5 U.S.C. § 552(a)(6)(B), and denied Plaintiff's expedited processing request. *See* Ex. B at 1-2. Defendant ICE further "acknowledg[ed]" the fee waiver request and stated "[w]e will adjudicate this request only if the agency is allowed to assess fees under the FOIA." *Id.* at 1. Defendant ICE also placed the request on the "Complex" processing track. *See* Ex. C at 17. The letter provided no substantive response to the request.

64.     On January 14, 2026, Law Lab timely appealed Defendant ICE's denial of expedited processing. Ex. C at 1-3. In the alternative, Plaintiff appealed the placement of the request in the "complex" processing track, as indicated on Defendant ICE's SecureRelease portal. *Id.* at 1-2, 17.

65.     In its appeal, Plaintiff explained that Defendant ICE's denial did not acknowledge the request for expedited processing was justified based on the loss of substantial due process rights or a matter of widespread media interest under 6 C.F.R. § 5.5(e)(1). Ex. C at 2. Plaintiff further explained that Ms. Pena's detailed, certified statement sufficiently supported the request for expedited processing on all four grounds, including a particular urgency to inform the public "the extends beyond the public's right to know about government activity generally." *Id.* at 2 (quoting 6 C.F.R. § 5.5(e)(3)).

66.     In its appeal, Plaintiff also challenged the placement of the ICE FOIA request on the "complex" track, explaining that the "request clearly identifies the documents that we seek pursuant to 5 U.S.C. § 552: the search pertains only to records related to plans for overnight detention in a single state, and the search is also limited in duration." Ex. C at 2.

67.     By letter dated February 12, 2026, Defendant ICE affirmed its decision to deny Law Lab's request for expedited processing. Ex. D at 4.

18

Compl. for Declaratory & Injunctive Relief

68.    In Defendant ICE's February 2026 letter, it also stated that "ICE has determined that the ICE FOIA Office has begun processing your request on a 'first-in, first-out basis' and is currently still in the process of responding to your request. The ICE FOIA Office will provide a direct response to you." *Id.* The letter provided no substantive response to the request.

69.    As of July 8, 2026 Defendant ICE's online portal for tracking FOIA Requests, https://www.securerelease.us/, stated the "Request Status" of FOIA Request 2026-ICFO-10513 as "Searching for Records" and "Fee Waiver Requested: Not Applicable."

70.    Plaintiff has received no other correspondence from Defendant ICE.

71.    As of July 8, 2026, it has been 122 working days since Plaintiff submitted the ICE FOIA Request.

72.    Defendant ICE did not determine whether to comply with the ICE FOIA Request by the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) or (B). Defendant ICE has failed to produce any records or make any substantive response to the ICE FOIA Request.

73.    Defendant ICE's failure to make a determination within the statutory time period constitutes a constructive denial of the ICE FOIA Request. Thus, Plaintiff is deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

*FWS FOIA Request*

74.    One January 15, 2026, Law Lab submitted the FWS FOIA Request to Defendant FWS using the electronic Public Access Link portal provided by Defendant FWS. Ex. E.

75.    The request sought disclosure of records related to the ICE's project to construct or transform facilities for the purposes of overnight immigration detention in the state of Oregon from February 1, 2025 through the date of fulfillment of the request, including but not limited to: correspondence between FWS and ICE as well as environmental reviews pertaining to: (1) areas at or around the Newport Municipal Airport in the City of Newport; (ii) the area of North Bend;

19

Compl. for Declaratory & Injunctive Relief

(iii) the area of Warrenton; and (iv) the Portland area, including near the Port of Portland or the Portland Airport. *Id.* More specifically, the FWS FOIA request sought:

- All records in connection with FWS consultation(s) pursuant to Section 7 of the Endangered Species Act (ESA) (either formal or informal) requested by and/or prepared for ICE in relation to the Oregon Detention Project, including but not limited to: species lists, biological assessments and opinions, determinations of whether a listed species or critical habitat is present, identification or assessment of sensitive habitats, and applications for and grants of exemptions.

- All records prepared by FWS in connection with consultation(s) pursuant to Section 7 of the Endangered Species Act (ESA) (either formal or informal); assessment of applications or implementation of grants pertaining to the North American Wetlands Conservation Act; or other environmental reviews conducted (1) at or around the Newport Municipal Airport in the City of Newport; (ii) in or around the area of North Bend; (iii) in or around the area of Warrenton; and (iv) in or around the Portland area, including near the Port of Portland or the Portland Airport.

- To the extent not captured above, this request includes all correspondence, including but not limited to internal FWS correspondence and correspondence between FWS and ICE, including emails and their attachments related to the Oregon Detention Project.

*Id.* at 1-2.

76.     Plaintiff sought expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 43 C.F.R. § 2.20(a)(1)-(2). *Id.* at 3. Plaintiff attached a statement from Isaura Pena in support of its request for expedited processing. *See id.* at 9-11.

77.     Ms. Pena's certified statement explained that the FWS FOIA Request involves: (1) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; and (2) an urgency to inform the public about an actual or alleged federal government activity. *Id.* at 9.

78.     First, Ms. Pena explained the need for expedited processing because the lack therefore "could reasonably be expected to pose an imminent threat to the life or physical safety

20
Compl. for Declaratory & Injunctive Relief

of individuals in custody at an overnight detention center and the surrounding community." Ms. Pena cited to news reporting and statements from members of Congress raising concerns about the environmental and weather conditions at and near the Newport Municipal Airport in the city of Newport, including gale-force winds, heavy rainfall, flooding, cold weather, and the risk of tsunami. *Id.* at 9-10.

79.    Second, Ms. Pena explained the need for expedited processing because there is an urgency to inform the public, citing to numerous news articles about "what little is publicly known about the federal government's plans to begin overnight immigration detention in Oregon" and letters from elected officials to ICE "requesting more information and express[ing] concern about ICE's reported plans[.]" *Id.* at 10-11.

80.    Plaintiff asked Defendant FWS to waive all fees associated with the request under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) "because disclosure is 'likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester' and Innovation Law Lab does not seek the [records] for a commercial purpose." Ex. E at 3-6 (citing 5 U.S.C. § 552(a)(4)(A)(iii)).

81.    By email dated January 15, 2026, the Department of the Interior acknowledged receipt of the FWS FOIA Request and assigned the control number DOI-2026-003238. Ex. F at 1. The email provided no substantive response to the request.

82.    By email dated March 3, 2026, Plaintiff received a status update that the FWS FOIA Request "has been updated to the following status 'On hold – other'." Ex. G at 1. The email provided no substantive response to the request.

83.    On June 26, 2026, FWS denied Plaintiff's request for expedited processing, assigned the FOIA to the "Complex processing track" and stated that "we expect that we will dispatch a determination to you by September 21, 2026." Ex. K at 1.

84.    On July 8, 2026, Law Lab timely appealed FWS's denial of expedited processing.

21
Compl. for Declaratory & Injunctive Relief

Ex. L at 1. In the alternative, Plaintiff appealed the placement of the request in the "complex" processing track. *Id.*

85.    In its appeal, Plaintiff explained that Defendant FWS's denial did not engage with or even reference Ms. Pena's detailed, certified statement, which sufficiently supported the request for expedited processing on both grounds. Ex. L at 2.

86.    In its appeal, Plaintiff also challenged the placement of the FWS FOIA request on the "complex" track, explaining that the "request clearly identifies the documents that we seek pursuant to 5 U.S.C. § 552: the search pertains only to records related to Section 7 consultations and environmental reviews and assessments that were (1) requested and/or prepared for ICE in connection with overnight immigration detention in Oregon over a limited duration, or (2) conducted at four specific locations in Oregon over a limited duration." Ex. L at 2-3.

87.    As of July 8, 2026, Defendant FWS's online portal for tracking FOIA requests, securefoia.doi.gov, stated the "Status" of FOIA Request DOI-2026-00323 is "Assigned for Processing" and the "Estimate Delivery Date" is September 21, 2026.

88.    Plaintiff has received no other correspondence from Defendant FWS.

89.    As of July 8, 2026, it has been 115 working days since Plaintiff submitted the FWS FOIA Request.

90.    Defendant FWS did not determine whether to comply with the FWS FOIA Request by the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) or (B). Defendant FWS has failed to produce any records or make any substantive response to the FWS FOIA Request.

91.    Defendant FWS's failure to make a determination within the statutory time period constitutes a constructive denial of the FWS FOIA Request. Thus, Plaintiff is deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

22

Compl. for Declaratory & Injunctive Relief

*USCG FOIA Request*

92.    On January 7, 2026, Plaintiff submitted a FOIA request to Defendant USCG by using the electronic SecureRelease portal provided by Defendant USCG ("Original USCG FOIA Request"). Ex. I. The request sought all records created since February 1, 2025 through the fulfillment of this request, including correspondence, policy documents, and guidance, whether formal or informal, regarding the U.S. Coast Guard's coordination and cooperation with U.S. Immigration and Customs Enforcement for overnight immigration detention facilities in the state of Oregon. *Id.* at 1.

93.    By email dated January 27, 2026, Defendant USCG acknowledged receipt of this request and assigned it reference number 2026-CGFO-01053. Ex. J at 1. Defendant USCG also requested that Plaintiff resubmit its request within 30 days because Defendant USCG determined that the request was "too broad in scope or did not specifically identify the records which you are seeking" and the "specific names of individuals of whom correspondence to be searched" was needed to "clarify" the request. *Id.*

94.    On February 23, 2026, Plaintiff re-submitted a revised FOIA Request to Defendant USCG ("USCG FOIA Request") via email. Ex. H. This request sought all records created since February 1, 2025 through the fulfillment of this request, including correspondence, policy documents, and guidance, whether formal or informal, regarding the U.S. Coast Guard's coordination and cooperation with U.S. Immigration and Customs Enforcement for overnight immigration detention facilities in the state of Oregon. *Id.* at 1. As stated in the request, it includes but is not limited to the following records:

- Records related to or reflecting correspondence or communications (including emails and attachments) regarding plans to use U.S. Coast Guard facilities or property in Oregon for the purposes of federal immigration detention, including at or near (i) Air Station Astoria in Warrenton; (ii) Air Station North Bend in North Bend; (iii) the Air Facility at the Newport Municipal Airport in Newport ("AIRFAC Newport"); and (iv) the U.S. Coast Guard Station

23

Compl. for Declaratory & Injunctive Relief

Portland in Portland. These records include, but are not limited to, correspondence and communication:

- o between U.S. Coast Guard personnel (including but not limited to acting commandant Kevin Lunday and senior officials) and ICE personnel;
- o between the U.S. Coast Guard and federal contractors;
- o between the U.S. Coast Guard and the Department of Homeland Security ("DHS");
- o internally within the U.S. Coast Guard; and
- o related to plans for federal civil immigration detention in Oregon on which U.S. Coast Guard personnel were copied.
- o In sum, Law Lab requests that U.S. Coast Guard personnel's emails and communications be produced to the extent that they pertain to plans for overnight civil immigration detention in the state of Oregon. This request is narrowly limited in subject matter (overnight civil immigration detention), geographic scope (the state of Oregon), and timeframe (February 1, 2025, through the date of fulfillment of this request). The communications of acting commandant Kevin Lunday, and other personnel involved, including senior Coast Guard officials, in operations in Oregon for the purposes of overnight civil immigration detention, should be produced.

- Records relating to any policy documents, guidance, memoranda of understanding, or other agreements related to the temporary or permanent use of U.S. Coast Guard facilities by ICE for the purposes of immigration detention in Oregon. This includes a list of U.S. Coast Guard sites potentially available for ICE to use for the purpose of overnight civil immigration detention.

- Documents, including correspondence, meeting agendas, meeting minutes, and transcripts related to the October 31, 2025 meeting at the Newport Municipal Airport regarding converting the U.S. Coast Guard property to an ICE detention facility.

*Id.* at 2-3.

95. Plaintiff sought expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). Ex. H at 3-4. Plaintiff attached a statement from Isaura Pena in support of its request for expedited processing. *See id.* at 9-12.

96. Ms. Pena's certified statement justified expedited processing of the USCG FOIA

Compl. for Declaratory & Injunctive Relief

Request on the same grounds and reasoning as the ICE FOIA Request described above. *Id.* at 9-12. Ms. Pena emphasized specifically widespread concern and interest in the U.S. Coast Guard's role and involvement in ICE's Oregon Detention Project. *Id.*

97.     Plaintiff has received no other correspondence from Defendant USCG, including no substantive response to the USCG FOIA Request.

98.     As of July 8, 2026, Defendant USCG's online portal for tracking FOIA Requests, https://www.securerelease.us/, stated the "Request Status" of FOIA Request 2026-CGFO-01053 as "Processing" on the "Complex" processing track, with both the fee waiver and expedited processing requests "Pending Decision." Defendant USCG's SecureRelease portal did not show Plaintiff's re-submitted FOIA request linked to the portal.

99.     As of July 8, 2026, it has been 90 working days since Plaintiff submitted the USCG FOIA Request.

100.     Defendant USCG did not determine whether to comply with the USCG FOIA Request by the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) or (B). Defendant USCG has failed to produce any records or make any substantive response to the USCG FOIA Request.

101.     Defendant USCG's failure to make a determination within the statutory time period constitutes a constructive denial of the USCG FOIA Request. Thus, Plaintiff is deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

Compl. for Declaratory & Injunctive Relief

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Timely Respond**

***Against All Defendants***

102.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

103.    Pursuant to 5 U.S.C. § 552(a)(6)(A) and (B), Defendants ICE, FWS and USCG were obligated to promptly produce records responsive to Plaintiff's FOIA Requests.

104.    Plaintiff submitted the ICE FOIA Request to Defendant ICE on January 6, 2026. Defendant ICE failed to issue a response, including a determination of whether to comply with the request and the reasons therefore, in the time provided under 5 U.S.C. § 552(a)(6)(A)(i) (20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 552(a)(6)(B)(i) (10 additional working days).

105.    Plaintiff submitted the FWS FOIA Request to Defendant FWS on January 15, 2026. Defendant FWS failed to issue a response, including a determination of whether to comply with the request and the reasons therefore, in the time provided under 5 U.S.C. § 552(a)(6)(A)(i) (20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 552(a)(6)(B)(i) (10 additional working days).

106.    Plaintiff submitted the USCG FOIA Request on February 23, 2026. Defendant USCG failed to issue a response, including a determination of whether to comply with the request and the reasons therefore, in the time provided under 5 U.S.C. § 552(a)(6)(A)(i) (20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 552(a)(6)(B)(i) (10 additional working days).

26
Compl. for Declaratory & Injunctive Relief

107. Defendants' failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. § 552(a)(6)(A) and (B) and the corresponding regulations.

## COUNT TWO

### Violation of FOIA, 5 U.S.C. § 552
### Failure to Grant Expedited Processing

#### *Against ICE and USCG*

108. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

109. An agency must make a determination with respect to a request for expedited processing within 10 calendar days. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

110. Under 5 U.S.C. § 552(a)(6)(E)(i)(I), agencies are required to promulgate regulations to provide for expedited processing of requests for records where there is a "compelling need."

111. DHS regulations provide that requests and appeals must be processed on an expedited basis where: (i) "the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) there is "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;"; (iii) the request involves "[t]he loss of substantial due process rights"; or (iv) there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(i)-(iv).

112. Plaintiff requested expedited processing of the ICE and USCG Requests.

113. Defendant ICE denied expedited processing of Plaintiffs' ICE FOIA Request. Plaintiff timely appealed Defendant ICE's determination on Plaintiff's expedited processing

27

Compl. for Declaratory & Injunctive Relief

request. Defendant ICE issued its final decision affirming the denial of expedited processing on February 12, 2026. Defendant USCG has not yet made a determination on Plaintiff's USCG FOIA Request, thereby constructively denying it.

114. Plaintiff has sufficiently demonstrated that there is a compelling need for expeditious consideration of its requests. In support of its requests for expedited processing of the ICE and USCG FOIA requests, Plaintiff explained through sworn declarations that the requests involved (1) circumstances for which the lack of expedited processing could reasonably expect to pose an imminent threat to the life of safety to individuals in custody at an overnight detention center and the surrounding community, citing to widespread reporting regarding the significant concerns raised by a possible soft-sided tent facility along Oregon's coast subject to extreme weather; (2) an urgency to inform the public as evidence by numerous news articles and statements by elected officials and Innovation Law Lab's significant engagement in the dissemination of information; and (3) issues implicating the loss of substantial due process rights, including the deprivation of access to the U.S. immigration process, counsel, and coerced deportation as documented at other military sites used for overnight detention.

115. By denying or constructively denying Plaintiff's request for expedited processing, Defendants ICE and USCG have violated Plaintiff's rights under 5 U.S.C. § 552(a)(6)(E) and Defendants' regulations.

## COUNT THREE

### Violation of FOIA, 5 U.S.C. § 552
### Failure to Grant Fee Waiver

### *Against All Defendants*

116. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

28
Compl. for Declaratory & Injunctive Relief

117.    Defendant is required to waive fees associated with requests where disclosure of the requested information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

118.    Plaintiff has demonstrated that disclosure of ICE's plans for overnight detention in Oregon will contribute significantly to the public's understanding of the government's policies and practices regarding immigration detention and its expansion. Plaintiff, a 501(c)(3) nonprofit organization, does not seek disclosure of the requested records for a commercial interest – rather, Plaintiff intends to disseminate the requested information to the public at no cost.

119.    Plaintiff requested a waiver of all fees associated with the ICE FOIA Request, the FWS FOIA Request, and the USCG FOIA Request. Defendant ICE has acknowledged this request, and the SecureRelease portal states: "Fee Waiver Requested: Not Applicable." Defendant USCG's SecureRelease portal states: "Fee Waiver Requested: Pending Decision." Defendant FWS has not acknowledged Plaintiff's fee waiver request.

120.    By failing to non-conditionally grant Plaintiff's fee waiver requests, Defendants ICE, FWS, and USCG have violated Plaintiff's rights under 5 U.S.C. § 552(a)(4)(A)(iii) and Defendants' regulations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Assume jurisdiction in this matter and maintain jurisdiction until Defendants ICE, FWS, and USCG comply with FOIA and every order of this court;

b.      Declare unlawful Defendants' ICE, FWS, and USCG failures to make determinations on Plaintiffs' FOIA requests within the statutory time frame, grant Plaintiff's requests for a fee waiver, and grant Plaintiff's requests for expedited processing

29

Compl. for Declaratory & Injunctive Relief

of the ICE and USCG FOIA requests;

c.      Order Defendants ICE and USCG to grant Plaintiff's requests for expedited processing and to process Plaintiff's requests on an expedited basis by conducting an adequate search for all responsive records in accordance with 5 U.S.C. § 552(a)(4)(E) and providing Plaintiff with non-exempt portions of the requested records within 10 business days of the Court's order;

d.      Order Defendant FWS to process Plaintiffs request by conducting a search for all responsive records in accordance with 5 U.S.C. § 552(a)(4)(E) and providing Plaintiff with non-exempt portions of the requested records within 20 business days of the Court's order;

e.      Order Defendants ICE, FWS, and USCG to expeditiously process and disclose all responsive, nonexempt records, and enjoin Defendants from improperly withholding requested records;

f.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provision of law; and

g.      Grant such other relief as the Court may deem just, equitable, and appropriate.


DATED: July 8, 2026                          Respectfully submitted,

                                             By: */s/ Jordan Cunnings*

                                             **Jordan Cunnings,** OSB No. 182928
                                             jordan@innovationlawlab.org
                                             **Stephen Manning,** OSB No. 013373
                                             stephen@innovationlawlab.org
                                             **Rachel Landry**, MA Bar No. 713320*
                                             rachel@innovationlawlab.org

30

Compl. for Declaratory & Injunctive Relief

INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204
Telephone: (503) 922-3042

*pro hac vice application forthcoming*

*Attorneys for Plaintiff Innovation Law Lab*

31

Compl. for Declaratory & Injunctive Relief