

January 14, 2026

***Submitted via Priority Mail and via email to: GILDFOIAAppeals@ice.dhs.gov***

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street. S.W., Mail Stop 5900
Washington, D.C. 20536-5900

**RE: Freedom of Information Act Appeal – FOIA Request 2026-ICFO-10513 (ICE's Plans for Overnight Immigration Detention Facilities in Oregon)**

To Whom It May Concern:

This is a timely filed administrative appeal under the Freedom of Information Act. On June 6, 2026, Innovation Law Lab submitted a request under 5 U.S.C. § 552 requesting records related to Immigration and Customs Enforcement's ("ICE") plans for overnight immigration detention in Oregon. We asked that the agency limit the search from February 1, 2025 through the date of fulfillment of the request. ICE assigned the request reference number: 2026-ICFO-10513.

By email dated January 13, 2026, ICE denied our request for expedited processing stating that Innovation Law Lab's "request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1)." The email further states that our request "failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally." The denial additionally states that our "letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards."

Innovation Law Lab hereby appeals the denial of our request for expedited processing. In the alternative, we appeal the placement of our request in the complex track of processing. Our initial request, including exhibits, the ICE FOIA Office's response, and a screenshot of the SecureRelease Portal are enclosed.

## I.     <u>The request satisfies the requirements for expedited processing.</u>

Our request clearly lays out the need for expedited processing on *all four* grounds delineated in 6 C.F.R. § 5.5(e)(1)(i)-(iv) through the Statement in Support of Request for Expedited Processing provided by Ms. Isaura Pena.

**Exhibit C - Page 1 of 17**

First, the Agency's denial does not acknowledge that our request for expedited processing is justified under the latter two grounds enumerated in 6 C.F.R. § 5.5(e)(1), where the request involves "the loss of substantial due process rights" and "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iii)-(iv). The Agency's denial only bases its justification on the first two enumerated grounds. *See* 6 C.F.R. § 5.5(e)(1)(i)-(ii).

Second, as required by 6 C.F.R. § 5.5(e)(3), our request was accompanied by a detailed statement by Ms. Isaura Pena, certified to be true and correct, explaining with specificity the basis for our request for expedited processing on each of the four grounds. *See* FOIA Request 2026-ICFO-10513, Exhibit A, Statement in Support of Request for Expedited Processing for Freedom of Information Act Request. The Agency's denial of our request for expedited processing neither engages with nor even references Ms. Pena's statement, which amply demonstrates the need for expedited processing under each ground. *See id.* at ¶¶ 5-7 (explaining why the request warrants expedited processing, where an imminent threat to life or physical safety is involved under 6 C.F.R. § 5.5(e)(1)(i)); *id.* at ¶¶ 8-11 (explaining that the request warrants expedited processing because there is an urgency to inform the public under 6 C.F.R. § 5.5(e)(1)(ii)); *id.* at ¶¶ 12-13 (explaining why the request warrants expedited processing because it involves an issue implicating the loss of substantial due process rights under 6 C.F.R. § 5.5(e)(1)(iii)); *id.* at ¶¶ 14-16 (explaining that the request warrants expedited because it involves a matter of widespread and exceptional media interest under 6 C.F.R. § 5.5(e)(1)(iii)).

Finally, despite the Agency's characterization otherwise, the Statement of Isaura Pena demonstrates a "particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally." 6 C.F.R. § 5.5(e)(3). As explained in federal regulation, "[t]he existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic." *Id.* The Statement of Isaura Pena does just that, citing to numerous articles and published letters from elected officials on the topic, *see* FOIA Request 2026-ICFO-10513, Exhibit A, n.3-5, and there are additional published articles and statements from elected officials cited throughout the request itself, *see* FOIA Request 2026-ICFO-10513. Our request thus establishes that the urgency to inform the public is not generalized but particular to the subject matter of plans for overnight immigration detention in Oregon.

## II.    Innovation Law Lab's Request Does Not Warrant "Complex" Processing

Should this office affirm the denial of expedited processing, Innovation Law Lab appeals the placement of our request on the "complex" track. While the denial does not define the agency's definition of a "complex track" request, nothing about the nature or scope of our request is complex. Our request clearly identifies the documents that we seek pursuant to 5 U.S.C. § 552: the search pertains only to records related to plans for overnight detention in a single state, and the search is also limited in duration.

*** 

2

**Exhibit C - Page 2 of 17**

We await a response within 20 business days after the Agency's receipt of this administrative appeal, as provided by law. *See* 5 U.S.C. § 552(a)(6)(A)(ii). If you have any questions regarding this request or need any additional information, please contact Rachel Landry at 971-512-6543 or rachel@innovationlawlab.org. Thank you for your prompt attention to this matter.

Sincerely,

INNOVATION LAW LAB

Rachel Landry
Staff Attorney

Tess Hellgren
Director of Legal Advocacy

3

**Exhibit C - Page 3 of 17**



January 6, 2026

**SUBMITTED ELECTRONICALLY**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009

**Re: Freedom of Information Act Request – Records Related to ICE's Plans for Overnight Immigration Detention Facilities in Oregon**

**EXPEDITED PROCESSING REQUESTED**

**FEE WAIVER REQUESTED**

Dear Freedom of Information Officer

Innovation Law Lab ("Law Lab") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* seeking the following records that have been prepared, modified, received, transmitted, collected, and/or maintained by Immigration and Customs Enforcement ("ICE").

Law Lab seeks the disclosure of all records, including correspondence, solicitations, policy documents, and guidance, whether formal or informal, created since February 1, 2025, regarding ICE's plans for overnight immigration detention[1] in the state of Oregon.[2] These records include but are not limited to:

- Solicitations for contractors related to the operation[3] of a detention center in the state of Oregon, including but not limited to at or around (i) the Newport Municipal Airport in the

---

[1] Immigration detention should be construed broadly to include temporary soft or hard-sided structures; repurposed commercial or federal property; and permanent structures.

[2] *See* Zolan Kanno-Youngs et al., Trump Plans to Use Military Sites Across the Country to Detain Undocumented Immigrants, The New York Times (Feb. 21, 2025), https://www.nytimes.com/2025/02/21/us/politics/migrants-military-sites.html (reporting that the Trump administration "could start detaining migrants at other military bases [beyond Fort Bliss], close to the border and then across the country as necessary" including in Oregon); Zane Sparling, "We are going to fight": Newport among sites mulled for ICE facility, city says, Oregon Live (last updated Nov. 14, 2025 9:42 AM) (reporting on a letter of interest from a Texas-based defense contractor that "spurred concern in Newport that the federal government would seek to establish an immigration detention facility on Oregon's Central Coast").

[3] Operation should be construed broadly to include all aspects of operating a detention facility, including performance of health services, waste management, provision of meals and water, security, etc.

**Exhibit C - Page 4 of 17**

City of Newport; (ii) the area of North Bend; (iii) the area of Warrenton; and (iv) the Portland area, including near the Port of Portland or the Portland Airport; and including requests for proposals through the Worldwide Expeditionary Multiple Award Contract 2.1;[4]

- All documents submitted in response to solicitations for contractors related to the operation of a detention center in Oregon as described above;
- Records related to or reflecting correspondence and communications (including emails and attachments) regarding plans for federal immigration detention centers in Oregon, including:
    - between ICE and the U.S. military, including the U.S. Coast Guard[5]
    - between ICE and federal contractors;
    - between ICE and the Department of Homeland Security ("DHS");
    - internally within ICE;
- Job postings, documents, and communications, regarding the hiring of staff, including federally contracted staff, for the purposes of immigration detention in the state of Oregon, including but not limited to a project manager environmental scientist;[6]
- Documents, including correspondence, meeting agendas, meeting minutes, and transcripts related to October 31, 2025 meeting at the Newport Municipal Airport regarding converting the property to an ICE detention facility.[7]

Law Lab seeks the disclosure of the requested records beginning on February 1, 2025 through the date of the fulfillment of this request. Please construe this as an ongoing FOIA request, so that any records that come into possession of the agency prior to your final response to this FOIA Request should also be considered within the Request's scope.

As used in the above requests, "ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein. "DHS" means the Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

---

[4] *See* Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard (describing contractors bidding on an Oregon ICE facility through "a contracting vehicle known as Worldwide Expeditionary Multiple Award Contract 2.1, which sends solicitations directly to pre-vetted vendors").

[5] *See* Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM) https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/ (reporting "that the Coast Guard facility in Newport's Municipal Airport could be converted to an ICE center, pointing to the unexplained relocation of a life-saving Coast Guard rescue helicopter from Newport to North Bend, a city located about 95 miles away").

[6] Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf (describing "recent public job postings in the Portland and Newport areas suggest[ing] that planning is well underway to contract for a new or expanded detention facility")

[7] *See* Giorno et al., ICE Wants to Build an Oregon Detention Facility, *supra* note 2 (reporting on tour of the U.S. Coast Guard facility on October 31, 2025 from transcript NOTUS obtained).

**Exhibit C - Page 5 of 17**

***

If it is your position that responsive records exist but that certain records or portions thereof are exempt from disclosure, please identify the records that are being withheld and state the specific FOIA exemption claimed as to each record or portion thereof being withheld. Law Lab expects the release of all segregable portions of otherwise exempt records. In addition, please note that Law Lab seeks each record in its entirety. Accordingly, please provide all nonexempt portions of the requested records as "non-responsive," "out of scope," or the like.

Law Lab requests that responsive records be provided in electronic form wherever possible. For hard copies of the requested records, please furnish the records to:

> Rachel Landry
> Innovation Law Lab
> P.O. Box 40204
> Portland, OR 97240

## Request for Expedited Processing

Innovation Law Lab requests that this FOIA request be expedited pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e) because this FOIA request involves: (i) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) an urgency to inform the public about an actual or alleged federal government activity, (iii) the loss of substantial due process rights; and (iv) a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. *See* Exhibit A, Declaration of Isaura Pena.

## Request for Fee Waiver

Law Lab requests that all fees associated with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" and Innovation Law Lab does not seek the above-described documents for a commercial purpose. 5 U.S.C. § 552(a)(4)(A)(iii).

A. *Disclosure of the Information Is in the Public Interest*

The public has demonstrated tremendous concern about plans for immigration detention centers in Oregon.

Members of Congress have written letters to DHS and ICE requesting more information and transparency and expressing concern about possible plans for ICE detention in Oregon. On November 12, 2025, four members of Oregon's congressional delegation wrote a letter to DHS Secretary Kristi Noem requesting information and stating that "establishing ICE facilities in Newport [Oregon] would be deeply misguided and should not move forward without full

3

**Exhibit C - Page 6 of 17**

transparency and consultation with local officials."[8] On December 16, 2025, five members of the Oregon congressional delegation wrote a letter to DHS Secretary Noem and Acting Director of ICE Todd Lyons "request[ing] a full and detailed description of any plans to open or expand Immigration and Customs Enforcement (ICE) detention facilities in Oregon" and "strongly and unequivocally reject[ing] the need for any new detention capacity."[9] State and local leaders have also written statements and published newsletters to update their constituencies.[10] Newport Mayor Jan Kaplan stated on November 10, 2025: "I am deeply concerned by recent reports suggesting that Newport may be under consideration for an ICE detention facility. The well-being, safety, and values of our community are the highest priorities of myself and our City Council."[11] During a city council meeting in Newport, Oregon, to address rumors that ICE may set up a detention facility at the city's airport, over 800 people attended the meeting.[12]

Additionally, there has been widespread reporting on plans for ICE detention in Oregon.[13] Oregonians share a public interest in transparency and understanding federal government activity

---

[8] Letter from Sen. Ron Wyden et al., to DHS Secretary Kristi Noem 1 (Nov. 12, 2025), https://www.wyden.senate.gov/imo/media/doc/letter_to_dhs_re_coast_guard_and_ice_activities_in_newport_111225.pdf.

[9] Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf.

[10] *See, e.g.*, NEWS UPDATE FROM STATE REPRESENTATIVE DAVID GOMBERG: Addressing the ICE Rumors in Our Community, Tillamook County Pioneer (Nov. 11, 2025), https://www.tillamookcountypioneer.net/news-update-from-state-representative-david-gomberg-addressing-the-ice-rumors-in-our-community/ ("We are now aware there are persistent rumors and reports that ICE is in the process of expanding operations near the Newport Municipal Airport in space that has been deeded to the Coast Guard. . . . What I do know is that reports indicate the proposed siting of a new ICE detention facility in the Newport area. We are aware that our local Coast Guard helicopter has been relocated to North Bend, and that is disturbing. Information beyond that is scarce at this time."); NEWS UPDATE FROM STATE REPRESENTATIVE DAVID GOMBERG: An ICE Breakthrough, Tillamook County Pioneer (Dec. 23, 2025), https://www.tillamookcountypioneer.net/news-update-from-state-representative-david-gomberg-an-ice-breakthrough/ ("I have regularly spoken out against establishing an ICE prison here, citing the affect on our economy, the tourism industry, our workforce, infrastructure like water and sewer, local families and our core community values.").

[11] Statement from Newport Mayor Jan Kaplan (Nov. 10, 2025), https://www.newportoregon.gov/dept/adm/media/Nov_11-City_of_Newport_Statement_on_Potential_DHS_Facility.pdf.

[12] *See* Victor Park, Tears, frustration and fear from 800+ attending meeting on potential ICE facility, KATU (last updated Nov. 13, 2025), https://katu.com/news/local/community-to-address-newport-city-council-leaders-potential-immigration-customs-enforcement-ice-detention-center-municipal-airport.

[13] *See, e.g.*, Shaanth Nanguneri, Military housing contractor sought Newport airport lease site before ICE facility reports, Oregon Capital Chronicle (Nov. 11, 2025 5:58 PM), https://oregoncapitalchronicle.com/2025/11/11/military-housing-contractor-sought-newport-airport-lease-site-before-ice-facility-reports/; Dirk VanderHart, With ICE (maybe) waiting in the wings, Newport sits in limbo, OPB (Nov. 24, 2025 1:59 PM), https://www.opb.org/article/2025/11/24/ice-newport-helicopter-immigration-detention-center-oregon/; Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM), https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/; Dirk VanderHart, A federal defense contractor is seeking hundreds of coastal Oregon hotel rooms, city of Newport says, OPB (Nov. 25, 2025 6:28 PM), https://www.opb.org/article/2025/11/25/federal-defense-contractor-hotel-rooms-newport/; Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-

4

Exhibit C - Page 7 of 17

that will directly impact them, their neighbors, and their communities. Release of the above-described records will benefit the public by informing Oregonians of the federal government's plans to detain immigrants in their state and what the potential ramifications of such plans are, for their immigrant community members who might be detained there[14] and for the surrounding community and environment[15]. Where the Trump Administration has drastically increased immigration arrests of noncitizens has a pattern of practice of transferring detained noncitizens rapidly and throughout the country, the expansion of immigration detention into Oregon is also of national interest.[16]

---

detainees-coast-guard; Dirk VanderHart, Oregon asks judge to block potential ICE detention center in Newport, OPB (Dec. 19, 2025 7:41 PM), https://www.opb.org/article/2025/12/19/oregon-block-potential-ice-newport/; Newport files lawsuit to prevent federal government from using Coast Guard property for detention center, Lincoln Chronicle (Dec. 23, 2025), https://lincolnchronicle.org/newport-files-lawsuit-to-prevent-federal-government-from-using-coast-guard-property-for-detention-center/.

[14] In Oregon, ICE daily arrests have surged in recent months. *See* Plaintiffs' Reply in Support of Motion for a Preliminary Injunction, *CLEAR Clinic et al., v. Noem et al.,* Case No. 6:25-cv-01906, Dkt. 77 at 3 (D. Or., Dec 15, 2025) (describing surge of ICE arrests in Oregon from 0.3 arrests per day prior to the summer of 2025 to 1.39 arrests per day). The result has been a multitude of habeas corpus petitions challenging ICE's unlawful custody over immigrant Oregonians, as well as a putative class action challenging the denial of access to counsel to detained noncitizens in Oregon before their rapid transfer out of the state. *See* Mia Maldonao, Oregon immigrant advocates ask court for class action status in suit against feds, Oregon Capital Chronicle (Nov. 14, 2025 3:15 PM), https://oregoncapitalchronicle.com/2025/11/14/oregon-immigrant-advocates-ask-court-for-class-action-status-in-suit-against-feds/#:~:text=Attorneys%20at%20Innovation%20Law%20Lab,Zoom%20100%25 (reporting that attorneys at Law Lab alone filed thirteen habeas petitions in Oregon since June); First Amended Complaint, *CLEAR Clinic et al., v. Noem et al.,* Case No. 6:25-cv-01906, Dkt. 39 (D. Or., Nov. 12, 2025) (putative class action lawsuit challenging deprivation of right to counsel to detained noncitizens in Oregon); *see also Troy Brynelson, et al.,* Attorneys cite 'wave of coordinated arrests' along Willamette Valley in lawsuit to block swift out-of-state transfers of detainees, OPB (Oct. 16, 2025), https://www.opb.org/article/2025/10/16/ice-high-profile-arrests/ ("Federal data analyzed by OPB shows that immigration detainees in the Portland offices are often transferred within hours to the Northwest ICE Processing Center in Tacoma, Washington, or the Florence Service Processing Center in Florence, Arizona."), https://www.opb.org/article/2025/10/16/ice-high-profile-arrests/.

[15] *See* Complaint ¶¶ 84-111, *City of Newport v. Trump*, Case No. 6:25-cv-2396 (D. Or. Dec. 22, 2025) (describing how the city of Newport, Oregon's "Infrastructure, community, and economy are not designed to accommodate an ICE detention facility," including because of environmental factors like the risk of tsunamis, limited wastewater treatment infrastructure, and the city's tourism-dependent economy); First Amended Complaint ¶ 8, *State of Oregon v. Noem*, Case No. 6:25-cv-02172-AA (D. Or. Dec. 19, 2025) (describing how the Newport Municipal Airport is "exposed to the elements, including strong wind, hail, and cold temperatures" and "not equipped to house humans in temporary shelters or repurposed commercial buildings"); *id.* ¶¶ 9-13 (describing the protected species and habitats at risk of decline near the Newport Municipal Airport).

[16] As of November 30, 2025, ICE held over 65,000 individuals in custody for civil immigration violations. *See* Transactional Records Access Clearinghouse, Immigration Detention Quick Facts, https://tracreports.org/immigration/quickfacts/. As arrests and detentions have risen, the number of transfers of individuals in ICE custody has also increased dramatically. According to one report, in the first four weeks of the new administration, "the rate of out-of-state transfers by ICE was higher than they've ever been in at least 13 years." Leon Yin, et al., "The Rising Cost of ICE Flying Immigrants to Far-Flung Detention Centers," Bloomberg (May 1, 2025), https://www.bloomberg.com/graphics/2025-trump-ice-immigrant-move-costs-taxpayers/. *See also L-J-P-L- v. Wamsley*, Case No. 3:25-cv-01390-IM, Dkt. 63 at 3,14-15 (D. Or., Oct. 28, 2205) (describing transfer of client from Washington state to Arizona, transferred to Texas, flown to Guatemala and back, and then detained at the Fort Bliss Camp East Montana facility, all following the denial of his right to counsel)*; id.*, Dkt. 51 at ¶¶ 4, 12 (describing counsel's experience with another missing client being transferred to Guantanamo Bay, Cuba); *MLGG v. Wamsley*, Case No. 6:25-cv-02012-AA, Dkt. 24 at 1-2 (D. Or., Nov. 6, 2025) (granting further restraint on transfer to different states and describing transfer of petitioner to Southern Louisina during 48-hour briefing period); *id.*, Dkt. 41 at 7 (D. Or., Dec. 10, 2025) (granting petition and ordering release).

Exhibit C - Page 8 of 17

Moreover, Innovation Law Lab will ensure that the requested records will benefit the community as a whole by making those records publicly available on its website and sharing them with community organizations throughout the state of Oregon. Innovation Law Lab is a 501(c)(3) nonprofit organization that harnesses the power of technology, law, and organizing to advance immigrant and refugee justice. Innovation Law Lab's work includes representing noncitizens in their immigration cases, defending immigrant Oregonians' rights in federal court, and developing public-facing resources to educate and empower community members.

Innovation Law Lab has a proven track record of disseminating information of public concern free of charge in numerous different media and forums for use in educating the public. Law Lab consistently publishes and disseminates the results of public records requests to ensure that such materials are available to the public and will do so here.[17]

    *B. Disclosure of the Information Is Not Primarily in the Commercial Interests of the Requester*

Law Lab is a 501(c)(3) non-profit organization. As detailed above, Law Lab seeks the requested records for the purposes of disseminating relevant information to the public. Law Lab does not have a commercial interest in the requested records.

Accordingly, we request that all fees associated with this FOIA request be waived because Innovation Law Lab is entitled to a public interest fee waiver. If, however, a waiver is not granted, please contact Rachel Landry at 971.512.6543 or rachel@innovationlawlab.org to advise us of the amount of any anticipated or estimated search, review, and duplication charges in excess of $25.00 before you conduct these activities.

***

We expect a response within 10 calendar days of the agency's receipt of this request for expedited processing as provided by law. If you have any questions regarding this request or need any additional information, please contact Rachel Landry at 971.512.6543 or rachel@innovationlawlab.org. Thank you for your prompt attention to this matter.

Sincerely,

INNOVATION LAW LAB

Rachel Landry
Staff Attorney

Tess Hellgren
Director of Legal Advocacy

---

[17] For Law Lab's long track record in disseminating records published pursuant to records requests, *see, e.g.*, Innovation Law Lab, *Innovation Law Lab v. ICE*, https://innovationlawlab.org/case/innovation-law-lab-v-ice-0; Innovation Law Lab, *Innovation Law Lab v. USCIS*, https://innovationlawlab.org/case/innovation-law-lab-v-uscis ; Innovation Law Lab, *Innovation Law Lab v. ICE*, https://innovationlawlab.org/case/innovation-law-lab-v-ice; Innovation Law Lab, Torrance County Detention Facility Timeline, https://innovationlawlab.org/torrance-county-detention-facility-timeline.

6

Exhibit C - Page 9 of 17

# Exhibit A

Exhibit C - Page 10 of 17

### Statement in Support of Request for Expedited Processing
### for Freedom of Information Act Request

1. My name is Isaura Pena. I am the Director of Strategy at Innovation Law Lab ("Law Lab"). I have been an employee at Law Lab since 2021.

2. Innovation Law Lab is a 501(c)(3) non-profit organization that harnesses the power of technology, law, and organizing to advance immigrant and refugee justice. Innovation Law Lab's work includes representing noncitizens in their immigration cases, defending immigrant Oregonians' rights in federal court, and developing public-facing resources to educate and empower community members.

3. In my role as Director of Strategy, my responsibilities include community engagement with immigrant Oregonians, working with Oregon's elected officials to advance immigrant justice, and managing the dissemination of information related to immigration law and policy in numerous different media and forums for use in educating the public. Along with my team members, I monitor developments of exceptional media interest and importance to immigrant communities and maintain regular contact with a broad set of reporters.

4. I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e) because this FOIA request involves: (i) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) an urgency to inform the public about an actual or alleged federal government activity; (iii) the loss of substantial due process rights; and (iv) a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

### *Imminent threat to life or physical safety*

5. This FOIA request involves circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of individuals in custody at an overnight detention center and the surrounding community.

6. The widespread reporting regarding, and multiple lawsuits challenging, the possible construction of hard or soft-sided Immigration and Customs Enforcement ("ICE) detention facilities at or near the Newport Municipal Airport in the city of Newport, Oregon raise significant concerns to life or physical safety. Newport—located off the coast of the Pacific Ocean—is subject to gale-force winds, heavy rainfall and flooding. As Congressperson Val Hoyle has stated: "Hard-sided and soft-sided tents with those conditions off the coast, with incredibly strong winds in a tsunami zone, with the kind of

1

**Exhibit C - Page 11 of 17**

cold and weather that we have is insane."[1] The city of Newport itself has explained in a lawsuit challenging the federal government's decision to construct a detention center at or near Newport Municipal Airport the risks to community safety: "Highway 101, the only access road to the Airport, is within Newport's XXL tsunami inundation area overlay and is therefore subject to flooding and tsunami risk. … In the event of a nearshore Cascadia Subduction Zone earthquake, people in Newport's high-risk tsunami areas will have no more than 30 minutes to evacuate to higher ground before devastating tsunamis strike. … [The] decision to construct, maintain, and fund the ICE detention facility in Newport … will … compromise the community's safety."[2]

7. Expedited processing of this request is necessary to prevent the imminent risks to life and safety associated with plans to detain individuals overnight in Oregon, including at the Newport Municipal Airport.

### *Urgency to inform the public*

8. This FOIA request involves an urgency to inform the public about actual or alleged federal government activity.

9. Although Innovation Law Lab is not a full-time member of the news media, the organization is significantly engaged in information dissemination. Innovation Law Lab uses innovative social media strategies, publishes periodic e-mail updates, long and short-form videos, maintains a regularly updated website, and utilizes other content systems to widely share information and analysis. We will distribute the requested information through our website and social media platforms, including Facebook, Twitter, and Instagram. Additionally, we will share this information over multiple listservs and community networks that reach legal service providers in Oregon and the community writ large.

---

[1] Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard (quoting statement from congressional representative Val Hoyle to NOTUS).

[2] Complaint ¶¶ 94-96, *City of Newport v. Trump*, Case No. 6:25-cv-2396 (D. Or. Dec. 22, 2025); *see also id.* ¶ 103 (raising concerns regarding the ability to safely handle the anticipated volume of wastewater);  ¶¶ 92-93 (describing how increased "airplane and vehicle access risks hazardous conditions for aircrafts landing at or taking off from the Airport and increases the risk of wildlife entering through an open gate, resulting in aircraft damage and possible loss of life"); First Amended Complaint, *State of Oregon v. Noem*, Case No. 6:25-cv-02172-AA (D. Or. Dec. 19, 2025) (state of Oregon lawsuit challenging federal government's decision to construct a detention center at or near Newport Municipal Airport); *id.* ¶ 8 (describing how the Newport Municipal Airport is "exposed to the elements, including strong wind, hail, and cold temperatures" and "not equipped to house humans in temporary shelters or repurposed commercial buildings").

**Exhibit C - Page 12 of 17**

10. Numerous news articles have been published regarding what little is publicly known about the federal government's plans to begin overnight immigration detention in Oregon.[3] Additionally elected officials have sent letters to U.S. Immigration and Customs Enforcement and the Department of Homeland Security requesting more information and expressed concern about ICE's reported plans to expand detention capacity to Oregon.[4] These statements from elected officials and news articles are a strong indicator of the particular urgency to inform the public with timely, accurate, and comprehensive information.

11. Because Innovation Law Lab is dedicated to advancing immigrant and refugee justice and defending immigrant Oregonians, we are well positioned to both assess the urgency of these issues and inform the public.

### *Loss of substantial due process rights*

12. This FOIA request involves an issue implicating the loss of substantial due process rights.

13. As the Trump Administration has rapidly expanded immigration enforcement, it has expanded immigration detention, including at the Fort Bliss military base in Texas. The Fort Bliss military base is a "model" for "establishing a nationwide network of military detention facilities"—including in Oregon.[5] Yet detention at military sites raises

---

[3] *See, e.g.*, Shaanth Nanguneri, Military housing contractor sought Newport airport lease site before ICE facility reports, Oregon Capital Chronicle (Nov. 11, 2025 5:58 PM), https://oregoncapitalchronicle.com/2025/11/11/military-housing-contractor-sought-newport-airport-lease-site-before-ice-facility-reports/; Dirk VanderHart, With ICE (maybe) waiting in the wings, Newport sits in limbo, OPB (Nov. 24, 2025 1:59 PM), https://www.opb.org/article/2025/11/24/ice-newport-helicopter-immigration-detention-center-oregon/; Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM) https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/; Dirk VanderHart, A federal defense contractor is seeking hundreds of coastal Oregon hotel rooms, city of Newport says, OPB (Nov. 25, 2025 6:28 PM), https://www.opb.org/article/2025/11/25/federal-defense-contractor-hotel-rooms-newport/; Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard; Dirk VanderHart, Oregon asks judge to block potential ICE detention center in Newport, OPB (Dec. 19, 2025 7:41 PM), https://www.opb.org/article/2025/12/19/oregon-block-potential-ice-newport/; Newport files lawsuit to prevent federal government from using Coast Guard property for detention center, Lincoln Chronicle (Dec. 23, 2025), https://lincolnchronicle.org/newport-files-lawsuit-to-prevent-federal-government-from-using-coast-guard-property-for-detention-center/.

[4] *See, e.g.*, Letter from Sen. Ron Wyden et al., to DHS Secretary Kristi Noem 1 (Nov. 12, 2025), https://www.wyden.senate.gov/imo/media/doc/letter_to_dhs_re_coast_guard_and_ice_activities_in_newport_11122 5.pdf.; Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf; Statement from Newport Mayor Jan Kaplan (Nov. 10, 2025), https://www.newportoregon.gov/dept/adm/media/Nov_11-City_of_Newport_Statement_on_Potential_DHS_Facility.pdf.

[5] *See* Zolan Kanno-Youngs et al., Trump Plans to Use Military Sites Across the Country to Detain Undocumented Immigrants, The New York Times (Feb. 21, 2025), https://www.nytimes.com/2025/02/21/us/politics/migrants-military-sites.html.

**Exhibit C - Page 13 of 17**

substantial due process concerns, including the denial of to access the U.S. immigration process, coerced deportation despite fear of removal to a third country, and the deprivation of legal resources like access to legal counsel. Human rights groups have documented such conditions at Camp East Montana—the tent camp at Fort Bliss—and the same risk is applicable to plans to detain immigrants overnight in Oregon.[6]

### *Matter of widespread and exceptional media interest*

14. This FOIA request involves a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

15. As cited above, numerous news outlets have demonstrated substantial and persistent interest in the U.S. Government's plans for immigration detention facilities in Oregon. The legality of these plans, particularly with respect to detention in the city of Newport, is also the subject of ongoing litigation, which calls the government's integrity and public confidence in the government's actions into question.[7]

16. Innovation Law Lab maintains regular contact with members of the press on such matters and has considerable capacity to disseminate the requested information to media outlets to ensure a widespread understanding of how the ICE is planning to detain people in overnight facilities in Oregon.

***

17. These considerations, whether considered separately or together, are more than sufficient to meet the standard set out in 5 U.S.C. § 552(a)(6)(E) for the agency to grant expedited processing of this FOIA request. For the reasons stated above, I respectfully request expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E).

I certify that this statement is complete, true, and correct to the best of my knowledge and belief.

_Isaura L. Pena_                                              January 5, 2026_____

Isaura L. Pena                                                  Date

---

[6] *See* ACLU et al., Letter to ICE Acting Director Todd Lyons, ICE El Paso Field Office Director Joel Garcia, Commanding General, Major General Curtis Taylor, and Garrison Commander, Col. Michael V. Soyka (Dec. 8, 2025), https://www.aclu.org/documents/ice-letter-re-fort-bliss.

[7] *See* Complaint, *City of Newport v. Trump*, Case No. 6:25-cv-2396 (D. Or. Dec. 22, 2025); First Amended Complaint, *State of Oregon v. Noem*, Case No. 6:25-cv-02172-AA (D. Or. Dec. 19, 2025).

**Exhibit C - Page 14 of 17**

 Gmail

**Rachel Landry <rachel@innovationlawlab.org>**

## ICE FOIA 2026-ICFO-10513
1 message

**ice-foia@ice.dhs.gov** <noreply@securerelease.us>                                Tue, Jan 13, 2026 at 7:54 AM
Reply-To: ice-foia@ice.dhs.gov
To: rachel@innovationlawlab.org

01/13/2026

Rachel Landry
PO Box 40204
Portland, Oregon 97240

RE:      ICE FOIA Case Number 2026-ICFO-10513

Dear Requester:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated 1/6/2026, your request for a waiver
of all assessable FOIA fees, and your request for expedited treatment. Your request was received in this office on 1/6/2026. Specifically, you have requested records pertaining to the disclosure of all records, including correspondence, solicitations, policy documents, and guidance, whether formal or informal, created since February 1, 2025, regarding ICE's plans for overnight immigration detention in the state of Oregon.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA
regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your
request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search,
ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you're able to narrow the scope of your request please contact our office.
Narrowing the scope may speed up the search process. We will make every effort to comply with your request in a timely manner.

**In addition, ICE acknowledges that your FOIA request includes a request for fee waiver. We will adjudicate this request only if the agency is allowed to assess fees under the FOIA. See 6 C.F.R. § 5.11(c)-(d). If this is the case, you will be notified of our decision in a separate communication. If there are no assessable fees, your request for a fee waiver will be moot and you will not receive further communications from ICE regarding fees related to this FOIA request.**

**Your request for expedited treatment is hereby denied.**

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii).  Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3).

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

**Exhibit C - Page 15 of 17**

If you deem the decision to deny expedited treatment of your request an adverse determination, you have the right to appeal.  Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.5(e)(2). You may submit your appeal electronically at GILDFOIAAppeals@ice.dhs.gov or via regular mail to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street,, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact FOIA Public Liaison Daniel Edgington, at (866) 633-1182 or 500 12th St, SW Stop 5009 Washington, DC 20536-5009. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Your request has been assigned reference number 2026-ICFO-10513. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

**Exhibit C - Page 16 of 17**



Exhibit C - Page 17 of 17