

July 8, 2026

Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
Washington, DC 20240
Attn: FOIA/Privacy Act Appeals Office

*Submitted via email to:* [FOIA.Appeals@sol.doi.gov](mailto:FOIA.Appeals@sol.doi.gov)

**RE: Freedom of Information Act Appeal – FOIA Request DOI-2026-001394 (ICE Oregon Detention Project)**

Dear FOIA Officer:

This is a timely filed administrative appeal under the Freedom of Information Act. On January 15, 2026, Innovation Law Lab submitted a request under 5 U.S.C. § 552 requesting records that have been prepared, modified, received, transmitted, collected, and/or maintained by the U.S. Fish and Wildlife Service ("FWS") related to Immigration and Customs Enforcement's ("ICE") plans for overnight immigration detention in Oregon. We asked that the agency limit the search from February 1, 2025, through the date of fulfillment of the request. The U.S. Fish & Wildlife Service ("FWS") assigned the request tracking number: DOI-2026-001394.

By email dated June 26, 2026, FWS denied Innovation Law Lab's request for expedited processing stating that our request "does not contain enough evidence to support either of [the] criteria [from 43 C.F.R. § 2.20] because it does not show evidence that it poses an imminent threat to life and does not show that the information has a particular value that will be lost if not disseminated quickly." The email states that the request for expedited processing was denied but contains no further explanation or engagement with the evidence presented in our FOIA request.

Innovation Law Lab hereby appeals the denial of our request for expedited processing. In the alternative, we appeal the placement of our request in the complex track of processing. Our initial request, including exhibits, and the FWS FOIA Office's June 26, 2026, response are enclosed.

## I.     The request satisfies the requirements for expedited processing.

Our request clearly lays out the need for expedited processing on *both* grounds delineated in 43 C.F.R. § 2.20 (a)(1)-(2) through the Statement in Support of Request for Expedited Processing provided by Ms. Isaura Pena.

**Exhibit L - Page 1 of 16**

As required by 43 C.F.R. § 2.20 (b)(1)-(2), our request was accompanied by a detailed statement by Ms. Isaura Pena, certified to be true and correct, explaining with specificity the basis for our request for expedited processing on each of the two grounds. *See* FOIA Request DOI-2026-001394, Exhibit A, Statement in Support of Request for Expedited Processing for Freedom of Information Act Request ("Statement of Ms. Pena"). The Agency's denial of our request for expedited processing **neither engages with nor even references Ms. Pena's statement**, which amply demonstrates the need for expedited processing under each ground. *See id.* at ¶¶ 5-7 (explaining why the request warrants expedited processing, where an imminent threat to life or physical safety is involved under 43 C.F.R. § 2.20(a)(1); *id.* at ¶¶ 8-11 (explaining that the request warrants expedited processing because there is an urgency to inform the public under 43 C.F.R. § 2.20(a)(2)(ii)).

First, despite the Agency's claim that our initial FOIA request did not justify expedited processing through evidence of "imminent threat to life," Isaura Pena's statement does just that through citing to numerous published news articles, statements from public officials, and lawsuits that detail the dangerousness of ICE's detention plans. *Id.* at ¶¶ 5-6, n.1-2. As Ms. Pena explains, "Newport— located off the coast of the Pacific Ocean—is subject to gale-force winds, heavy rainfall and flooding[.]" *Id.* ¶ 5. Ms. Pena quotes Congressperson Val Hoyle who stated that "Hard-sided and soft-sided tents with those conditions off the coast, with incredibly strong winds in a tsunami zone, with the kind of cold and weather that we have is insane." *Id.* ¶ 5. Ms. Pena further cites to the City of Newport's federal complaint filed in the District of Oregon, which states that "[The] decision to construct, maintain, and fund the ICE detention facility in Newport … will … compromise the community's safety." *Id.* The Statement of Ms. Pena amply establishes that the "[f]ailure to expedite the request could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;" 43 C.F.R. § 2.20 (a)(1), and the Agency does not explain how they concluded otherwise.

Second, the Statement of Ms. Pena demonstrates that the subject of this request has a "particular value that will be lost if not disseminated quickly" 43 C.F.R. § 2.20(a)(2)(iii). The regulation itself describes that this type of information "ordinarily refers to a breaking news story that concerns a matter of public exigency." *Id.* The Statement of Ms. Pena demonstrates the urgency of information dissemination by citing numerous articles and published letters from elected officials on the topic. *See* FOIA Request DOI-2026-001394, Exhibit A, ¶ 10, n.3-4. Our request thus establishes that the urgency to inform the public is particular to the subject matter of plans for overnight immigration detention in Oregon; plans which constitute a breaking news story concerning a matter of public exigency.

## II.    Innovation Law Lab's Request Does Not Warrant "Complex" Processing

Should this office affirm the denial of expedited processing, Innovation Law Lab appeals the placement of our request on the "complex" track. The denial does not define what procedures inform how many days it takes to process a request and place it on the "complex" track. Regardless, nothing about the nature or scope of our request is complex. Our request clearly identifies the documents that we seek pursuant to 5 U.S.C. § 552: the search pertains only to records related to Section 7 consultations and environmental reviews and assessments that were (1) requested and/or prepared for ICE in connection with overnight immigration detention in

2

**Exhibit L - Page 2 of 16**

Oregon over a limited duration, or (2) conducted at four specific locations in Oregon over a limited duration.

***

We await a response within 20 business days after the Agency's receipt of this administrative appeal, as provided by law. *See* 5 U.S.C. § 552(a)(6)(A)(ii). If you have any questions regarding this request or need any additional information, please contact Rachel Landry at 971-512-6543 or rachel@innovationlawlab.org. Thank you for your prompt attention to this matter.

Sincerely,

INNOVATION LAW LAB

_____                    _____

Rachel Landry, Staff Attorney              Kyle Haynes, Law Clerk

3

**Exhibit L - Page 3 of 16**



January 15, 2026

**SUBMITTED ELECTRONICALLY VIA FOIAXPress PAL**

U.S. Fish & Wildlife Service
Attn: Region 1 – Pacific (Oregon)
5275 Leesburg Pike, MS : IRTM
Falls Church, VA 22041

**Re: Freedom of Information Act Request – Records Pertaining to the Immigration and Customs Enforcement Oregon Detention Project**

　　**EXPEDITED PROCESSING REQUESTED**

　　**FEE WAIVER REQUESTED**

Dear FOIA Officer:

Innovation Law Lab ("Law Lab") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* seeking the following records that have been prepared, modified, received, transmitted, collected, and/or maintained by the U.S. Fish and Wildlife Service ("FWS"). Potential recordholders include, but are not limited to, the Oregon Ecological Services Fish and Wildlife Office (Interior Region 1).

Law Lab requests records related to the U.S. Immigration and Customs Enforcement ("ICE") project to construct or transform facilities for the purposes of overnight immigration detention in the state of Oregon (hereinafter, the "Oregon Detention Project").[1] These records include but are not limited to correspondence between FWS and ICE as well as environmental reviews pertaining to: (1) areas at or around the the Newport Municipal Airport in the City of Newport; (ii) the area of North Bend; (iii) the area of Warrenton; and (iv) the Portland area, including near the Port of Portland or the Portland Airport.

---

[1] *See* Zolan Kanno-Youngs et al., Trump Plans to Use Military Sites Across the Country to Detain Undocumented Immigrants, The New York Times (Feb. 21, 2025), https://www.nytimes.com/2025/02/21/us/politics/migrants-military-sites.html (reporting that the Trump administration "could start detaining migrants at other military bases [beyond Fort Bliss], close to the border and then across the country as necessary" including in Oregon); Zane Sparling, "We are going to fight": Newport among sites mulled for ICE facility, city says, Oregon Live (last updated Nov. 14, 2025 9:42 AM) (reporting on a letter of interest from a Texas-based defense contractor that "spurred concern in Newport that the federal government would seek to establish an immigration detention facility on Oregon's Central Coast").

**Exhibit L - Page 4 of 16**

From February 1, 2025, through the date of the fulfillment of this request, Law Lab requests:

- All records in connection with FWS consultation(s) pursuant to Section 7 of the Endangered Species Act (ESA)[2] (either formal or informal) requested by and/or prepared for ICE in relation to the Oregon Detention Project, including but not limited to: species lists, biological assessments and opinions, determinations of whether a listed species or critical habitat is present, identification or assessment of sensitive habitats, and applications for and grants of exemptions.

- All records prepared by FWS in connection with consultation(s) pursuant to Section 7 of the Endangered Species Act (ESA) (either formal or informal); assessment of applications or implementation of grants pertaining to the North American Wetlands Conservation Act; or other environmental reviews conducted (1) at or around the Newport Municipal Airport in the City of Newport; (ii) in or around the area of North Bend; (iii) in or around the area of Warrenton; and (iv) in or around the Portland area, including near the Port of Portland or the Portland Airport.

- To the extent not captured above, this request includes all correspondence, including but not limited to internal FWS correspondence and correspondence between FWS and ICE, including emails and their attachments related to the Oregon Detention Project.

Please construe this as an ongoing FOIA request, so that any records that come into possession of the agency prior to your final response to this FOIA Request should also be considered within the Request's scope.

As used in the above requests, "ICE" and "FWS" include and any components, subcomponents, offices, or personnel therein.

***

If it is your position that responsive records exist but that certain records or portions thereof are exempt from disclosure, please identify the records that are being withheld and state the specific FOIA exemption claimed as to each record or portion thereof being withheld. Law Lab expects the release of all segregable portions of otherwise exempt records. In addition, please note that Law Lab seeks each record in its entirety. Accordingly, please provide all nonexempt portions of the requested records as "non-responsive," "out of scope," or the like.

Law Lab requests that responsive records be provided in electronic form wherever possible. For hard copies of the requested records, please furnish the records to:

---

[2] *See* 16 U.S.C. §§1531 et seq.

2

Exhibit L - Page 5 of 16

Rachel Landry
Innovation Law Lab
P.O. Box 40204
Portland, OR 97240

**Request for Expedited Processing**

Innovation Law Lab requests that this FOIA request be expedited pursuant to 5 U.S.C. § 552(a)(6)(E) and Department of Interior Regulations, 43 C.F.R. § 2.20(a)(1)-(2), because this FOIA request involves: (1) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; and (2) an urgency to inform the public about an actual or alleged federal government activity. *See* Exhibit A, Declaration of Isaura Pena.

**Request for Fee Waiver**

Law Lab requests that all fees associated with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 43 C.F.R. § 2.45(a)–(b) because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" and Innovation Law Lab does not seek the above-described documents for a commercial purpose. 5 U.S.C. § 552(a)(4)(A)(iii).

   A. *Disclosure of the Information Is in the Public Interest*

The public has demonstrated tremendous concern about plans for immigration detention centers in Oregon, and disclosure of the requested information will shed light on the plans and possible environmental impacts.

Members of Congress have written letters to DHS and ICE requesting more information and transparency and expressing concern about possible plans for ICE detention in Oregon. On November 12, 2025, four members of Oregon's congressional delegation wrote a letter to DHS Secretary Kristi Noem requesting information and stating that "establishing ICE facilities in Newport [Oregon] would be deeply misguided and should not move forward without full transparency and consultation with local officials."[3] On December 16, 2025, seven members of the Oregon congressional delegation wrote a letter to DHS Secretary Noem and Acting Director of ICE Todd Lyons "request[ing] a full and detailed description of any plans to open or expand Immigration and Customs Enforcement (ICE) detention facilities in Oregon" and "strongly and unequivocally reject[ing] the need for any new detention capacity."[4] State and local leaders have

---

[3] Letter from Sen. Ron Wyden et al., to DHS Secretary Kristi Noem 1 (Nov. 12, 2025), https://www.wyden.senate.gov/imo/media/doc/letter_to_dhs_re_coast_guard_and_ice_activities_in_newport_111225.pdf.

[4] Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf.

3

**Exhibit L - Page 6 of 16**

also written statements and published newsletters to update their constituencies.[5] Newport Mayor Jan Kaplan stated on November 10, 2025: "I am deeply concerned by recent reports suggesting that Newport may be under consideration for an ICE detention facility. The well-being, safety, and values of our community are the highest priorities of myself and our City Council."[6] During a city council meeting in Newport, Oregon, to address rumors that ICE may set up a detention facility at the city's airport, over 800 people attended the meeting.[7]

Additionally, there has been widespread reporting on plans for ICE detention in Oregon.[8] Oregonians share a public interest in transparency and understanding federal government activity

---

[5] *See, e.g.*, NEWS UPDATE FROM STATE REPRESENTATIVE DAVID GOMBERG: Addressing the ICE Rumors in Our Community, Tillamook County Pioneer (Nov. 11, 2025), https://www.tillamookcountypioneer.net/news-update-from-state-representative-david-gomberg-addressing-the-ice-rumors-in-our-community/ ("We are now aware there are persistent rumors and reports that ICE is in the process of expanding operations near the Newport Municipal Airport in space that has been deeded to the Coast Guard. . . . What I do know is that reports indicate the proposed siting of a new ICE detention facility in the Newport area. We are aware that our local Coast Guard helicopter has been relocated to North Bend, and that is disturbing. Information beyond that is scarce at this time."); NEWS UPDATE FROM STATE REPRESENTATIVE DAVID GOMBERG: An ICE Breakthrough, Tillamook County Pioneer (Dec. 23, 2025), https://www.tillamookcountypioneer.net/news-update-from-state-representative-david-gomberg-an-ice-breakthrough/ ("I have regularly spoken out against establishing an ICE prison here, citing the affect on our economy, the tourism industry, our workforce, infrastructure like water and sewer, local families and our core community values.").

[6] Statement from Newport Mayor Jan Kaplan (Nov. 10, 2025), https://www.newportoregon.gov/dept/adm/media/Nov_11-City_of_Newport_Statement_on_Potential_DHS_Facility.pdf.

[7] *See* Victor Park, Tears, frustration and fear from 800+ attending meeting on potential ICE facility, KATU (last updated Nov. 13, 2025), https://katu.com/news/local/community-to-address-newport-city-council-leaders-potential-immigration-customs-enforcement-ice-detention-center-municipal-airport.

[8] *See, e.g.*, Shaanth Nanguneri, Military housing contractor sought Newport airport lease site before ICE facility reports, Oregon Capital Chronicle (Nov. 11, 2025 5:58 PM), https://oregoncapitalchronicle.com/2025/11/11/military-housing-contractor-sought-newport-airport-lease-site-before-ice-facility-reports/; Dirk VanderHart, With ICE (maybe) waiting in the wings, Newport sits in limbo, OPB (Nov. 24, 2025 1:59 PM), https://www.opb.org/article/2025/11/24/ice-newport-helicopter-immigration-detention-center-oregon/; Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM), https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/; Dirk VanderHart, A federal defense contractor is seeking hundreds of coastal Oregon hotel rooms, city of Newport says, OPB (Nov. 25, 2025 6:28 PM), https://www.opb.org/article/2025/11/25/federal-defense-contractor-hotel-rooms-newport/; Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25

Exhibit L - Page 7 of 16

that will directly impact them, their neighbors, their communities, and the surrounding environment. Release of the above-described records will benefit the public by informing Oregonians of the federal government's plans to detain immigrants in their state and what the potential ramifications of such plans are, for their immigrant community members who might be detained there[9] and for the surrounding community and environment[10]. Where the Trump Administration has drastically increased immigration arrests of noncitizens has a pattern of practice of transferring detained noncitizens rapidly and throughout the country, the expansion of

---

AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard; Dirk VanderHart, Oregon asks judge to block potential ICE detention center in Newport, OPB (Dec. 19, 2025 7:41 PM), https://www.opb.org/article/2025/12/19/oregon-block-potential-ice-newport/; Newport files lawsuit to prevent federal government from using Coast Guard property for detention center, Lincoln Chronicle (Dec. 23, 2025), https://lincolnchronicle.org/newport-files-lawsuit-to-prevent-federal-government-from-using-coast-guard-property-for-detention-center/.

[9] In Oregon, ICE daily arrests have surged in recent months. *See* Plaintiffs' Reply in Support of Motion for a Preliminary Injunction, *CLEAR Clinic et al., v. Noem et al.,* Case No. 6:25-cv-01906, Dkt. 77 at 3 (D. Or., Dec 15, 2025) (describing surge of ICE arrests in Oregon from 0.3 arrests per day prior to the summer of 2025 to 1.39 arrests per day). The result has been a multitude of habeas corpus petitions challenging ICE's unlawful custody over immigrant Oregonians, as well as a putative class action challenging the denial of access to counsel to detained noncitizens in Oregon before their rapid transfer out of the state. *See* Mia Maldonao, Oregon immigrant advocates ask court for class action status in suit against feds, Oregon Capital Chronicle (Nov. 14, 2025 3:15 PM), https://oregoncapitalchronicle.com/2025/11/14/oregon-immigrant-advocates-ask-court-for-class-action-status-in-suit-against-feds/#:~:text=Attorneys%20at%20Innovation%20Law%20Lab,Zoom%20100%25 (reporting that attorneys at Law Lab alone filed thirteen habeas petitions in Oregon since June); First Amended Complaint, *CLEAR Clinic et al., v. Noem et al.,* Case No. 6:25-cv-01906, Dkt. 39 (D. Or., Nov. 12, 2025) (putative class action lawsuit challenging deprivation of right to counsel to detained noncitizens in Oregon); *see also Troy Brynelson, et al.,* Attorneys cite 'wave of coordinated arrests' along Willamette Valley in lawsuit to block swift out-of-state transfers of detainees, OPB (Oct. 16, 2025), https://www.opb.org/article/2025/10/16/ice-high-profile-arrests/ ("Federal data analyzed by OPB shows that immigration detainees in the Portland offices are often transferred within hours to the Northwest ICE Processing Center in Tacoma, Washington, or the Florence Service Processing Center in Florence, Arizona."), https://www.opb.org/article/2025/10/16/ice-high-profile-arrests/.

[10] *See* Complaint ¶¶ 84-111, *City of Newport v. Trump*, Case No. 6:25-cv-2396 (D. Or. Dec. 22, 2025) (describing how the city of Newport, Oregon's "Infrastructure, community, and economy are not designed to accommodate an ICE detention facility," including because of environmental factors like the risk of tsunamis, limited wastewater treatment infrastructure, and the city's tourism-dependent economy); First Amended Complaint ¶ 8, *State of Oregon v. Noem*, Case No. 6:25-cv-02172-AA (D. Or. Dec. 19, 2025) (describing how the Newport Municipal Airport is "exposed to the elements, including strong wind, hail, and cold temperatures" and "not equipped to house humans in temporary shelters or repurposed commercial buildings"); *id.* ¶¶ 9-13 (describing the protected species and habitats at risk of decline near the Newport Municipal Airport).

5

Exhibit L - Page 8 of 16

immigration detention into Oregon is also of national interest.[11] The requested records concern the operations and activities of FWS and ICE and will meaningfully enhance information about the ICE Oregon Detention Project, including its potential impact on protected species and habitats to a reasonably broad audience of persons interested in the subject.

Moreover, Innovation Law Lab will ensure that the requested records will benefit the community broadly by making those records publicly available on its website and sharing them with community organizations throughout the state of Oregon. Innovation Law Lab is a 501(c)(3) nonprofit organization that harnesses the power of technology, law, and organizing to advance immigrant and refugee justice. Innovation Law Lab's work includes representing noncitizens in their immigration cases, defending immigrant Oregonians' rights in federal court, and developing public-facing resources to educate and empower community members.

Innovation Law Lab has a proven track record of disseminating information of public concern free of charge in numerous different media and forums for use in educating the public. Law Lab consistently publishes and disseminates the results of public records requests to ensure that such materials are available to the public and will do so here.[12]

---

[11] As of November 30, 2025, ICE held over 65,000 individuals in custody for civil immigration violations. *See* Transactional Records Access Clearinghouse, Immigration Detention Quick Facts, https://tracreports.org/immigration/quickfacts/. As arrests and detentions have risen, the number of transfers of individuals in ICE custody has also increased dramatically. According to one report, in the first four weeks of the new administration, "the rate of out-of-state transfers by ICE was higher than they've ever been in at least 13 years." Leon Yin, et al., "The Rising Cost of ICE Flying Immigrants to Far-Flung Detention Centers," Bloomberg (May 1, 2025), https://www.bloomberg.com/graphics/2025-trump-ice-immigrant-move-costs-taxpayers/. *See also L-J-P-L- v. Wamsley*, Case No. 3:25-cv-01390-IM, Dkt. 63 at 3,14-15 (D. Or., Oct. 28, 2205) (describing transfer of client from Washington state to Arizona, transferred to Texas, flown to Guatemala and back, and then detained at the Fort Bliss Camp East Montana facility, all following the denial of his right to counsel)*; id.*, Dkt. 51 at ¶¶ 4, 12 (describing counsel's experience with another missing client being transferred to Guantanamo Bay, Cuba); *MLGG v. Wamsley*, Case No. 6:25-cv-02012-AA, Dkt. 24 at 1-2 (D. Or., Nov. 6, 2025) (granting further restraint on transfer to different states and describing transfer of petitioner to Southern Louisina during 48-hour briefing period); *id.*, Dkt. 41 at 7 (D. Or., Dec. 10, 2025) (granting petition and ordering release).

[12] For Law Lab's long track record in disseminating records published pursuant to records requests, *see, e.g.*, Innovation Law Lab, *Innovation Law Lab v. ICE*, https://innovationlawlab.org/case/innovation-law-lab-v-ice-0; Innovation Law Lab, *Innovation Law Lab v. USCIS*, https://innovationlawlab.org/case/innovation-law-lab-v-uscis ; Innovation Law Lab, *Innovation Law Lab v. ICE*, https://innovationlawlab.org/case/innovation-law-lab-v-ice; Innovation Law Lab, Torrance County Detention Facility Timeline, https://innovationlawlab.org/torrance-county-detention-facility-timeline.

Exhibit L - Page 9 of 16

B. *Disclosure of the Information Is Not Primarily in the Commercial Interests of the Requester*

Law Lab is a 501(c)(3) non-profit organization. As detailed above, Law Lab seeks the requested records for the purposes of disseminating relevant information to the public. Law Lab does not have a commercial interest in the requested records.

Accordingly, we request that all fees associated with this FOIA request be waived because Innovation Law Lab is entitled to a public interest fee waiver. If, however, a waiver is not granted, please contact Rachel Landry at 971.512.6543 or rachel@innovationlawlab.org to advise us of the amount of any anticipated or estimated search, review, and duplication charges in excess of $25.00 before you conduct these activities.

***

We expect a response within 10 calendar days of the agency's receipt of this request for expedited processing as provided by law. If you have any questions regarding this request or need any additional information, please contact Rachel Landry at 971.512.6543 or rachel@innovationlawlab.org. Thank you for your prompt attention to this matter.

Sincerely,

INNOVATION LAW LAB

Rachel Landry
Staff Attorney

Tess Hellgren
Director of Legal Advocacy

7

**Exhibit L - Page 10 of 16**

# Exhibit A

Exhibit L - Page 11 of 16

**Statement in Support of Request for Expedited Processing
for Freedom of Information Act Request -- Records Pertaining to the Immigration and
Customs Enforcement Oregon Detention Project**

1. My name is Isaura Pena. I am the Director of Strategy at Innovation Law Lab ("Law Lab"). I have been an employee at Law Lab since 2021.

2. Innovation Law Lab is a 501(c)(3) non-profit organization that harnesses the power of technology, law, and organizing to advance immigrant and refugee justice. Innovation Law Lab's work includes representing noncitizens in their immigration cases, defending immigrant Oregonians' rights in federal court, and developing public-facing resources to educate and empower community members.

3. In my role as Director of Strategy, my responsibilities include community engagement with immigrant Oregonians, working with Oregon's elected officials to advance immigrant justice, and managing the dissemination of information related to immigration law and policy in numerous different media and forums for use in educating the public. Along with my team members, I monitor developments of exceptional media interest and importance to immigrant communities and maintain regular contact with a broad set of reporters.

4. I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 43 C.F.R. § 2.20(a)(1)-(2) because this FOIA request involves: (1) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; and (2) an urgency to inform the public about an actual or alleged federal government activity.

### *Imminent threat to life or physical safety*

5. This FOIA request involves circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of individuals in custody at an overnight detention center and the surrounding community.

6. The widespread reporting regarding, and multiple lawsuits challenging, the possible construction of hard or soft-sided Immigration and Customs Enforcement ("ICE) detention facilities at or near the Newport Municipal Airport in the city of Newport, Oregon raise significant concerns to life or physical safety. Newport—located off the coast of the Pacific Ocean—is subject to gale-force winds, heavy rainfall and flooding. As Congressperson Val Hoyle has stated: "Hard-sided and soft-sided tents with those conditions off the coast, with incredibly strong winds in a tsunami zone, with the kind of cold and weather that we have is insane."[1] The city of Newport itself has explained in a

---

[1] Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-

1

**Exhibit L - Page 12 of 16**

lawsuit challenging the federal government's decision to construct a detention center at or near Newport Municipal Airport the risks to community safety: "Highway 101, the only access road to the Airport, is within Newport's XXL tsunami inundation area overlay and is therefore subject to flooding and tsunami risk. … In the event of a nearshore Cascadia Subduction Zone earthquake, people in Newport's high-risk tsunami areas will have no more than 30 minutes to evacuate to higher ground before devastating tsunamis strike. … [The] decision to construct, maintain, and fund the ICE detention facility in Newport … will … compromise the community's safety."[2]

7. Expedited processing of this request is necessary to prevent the imminent risks to life and safety associated with plans to detain individuals overnight in Oregon, including at the Newport Municipal Airport.

### *Urgency to inform the public*

8. This FOIA request involves an urgency to inform the public about actual or alleged federal government activity.

9. Although Innovation Law Lab is not a full-time member of the news media, the organization is significantly engaged in information dissemination. Innovation Law Lab uses innovative social media strategies, publishes periodic e-mail updates, long and short-form videos, maintains a regularly updated website, and utilizes other content systems to widely share information and analysis. We will distribute the requested information through our website and social media platforms, including Facebook, Twitter, and Instagram. Additionally, we will share this information over multiple listservs and community networks that reach legal service providers in Oregon and the community writ large.

10. Numerous news articles have been published regarding what little is publicly known about the federal government's plans to begin overnight immigration detention in Oregon.[3]

---

oregon-detention-facility-detainees-coast-guard (quoting statement from congressional representative Val Hoyle to NOTUS).

[2] Complaint ¶¶ 94-96, *City of Newport v. Trump*, Case No. 6:25-cv-2396 (D. Or. Dec. 22, 2025); *see also id.* ¶ 103 (raising concerns regarding the ability to safely handle the anticipated volume of wastewater);  ¶¶ 92-93 (describing how increased "airplane and vehicle access risks hazardous conditions for aircrafts landing at or taking off from the Airport and increases the risk of wildlife entering through an open gate, resulting in aircraft damage and possible loss of life"); First Amended Complaint, *State of Oregon v. Noem*, Case No. 6:25-cv-02172-AA (D. Or. Dec. 19, 2025) (state of Oregon lawsuit challenging federal government's decision to construct a detention center at or near Newport Municipal Airport); *id.* ¶ 8 (describing how the Newport Municipal Airport is "exposed to the elements, including strong wind, hail, and cold temperatures" and "not equipped to house humans in temporary shelters or repurposed commercial buildings").

[3] *See, e.g.*, Shaanth Nanguneri, Military housing contractor sought Newport airport lease site before ICE facility reports, Oregon Capital Chronicle (Nov. 11, 2025 5:58 PM), https://oregoncapitalchronicle.com/2025/11/11/military-housing-contractor-sought-newport-airport-lease-site-before-ice-facility-reports/; Dirk VanderHart, With ICE (maybe) waiting in the wings, Newport sits in limbo, OPB (Nov. 24, 2025 1:59 PM),

**Exhibit L - Page 13 of 16**

Additionally elected officials have sent letters to U.S. Immigration and Customs Enforcement and the Department of Homeland Security requesting more information and expressed concern about ICE's reported plans to expand detention capacity to Oregon.[4] These statements from elected officials and news articles are a strong indicator of the particular urgency to inform the public with timely, accurate, and comprehensive information.

11. Because Innovation Law Lab is dedicated to advancing immigrant and refugee justice and defending immigrant Oregonians, we are well positioned to both assess the urgency of these issues and inform the public.

*** 

12. These considerations, whether considered separately or together, are more than sufficient to meet the standard set out in 5 U.S.C. § 552(a)(6)(E) for the agency to grant expedited processing of this FOIA request. For the reasons stated above, I respectfully request expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E).

I certify that this statement is complete, true, and correct to the best of my knowledge and belief.

_____        January 15, 2026_____
Isaura L. Pena                                  Date

---

https://www.opb.org/article/2025/11/24/ice-newport-helicopter-immigration-detention-center-oregon/; Shaanth Nanguneri, ICE contractor informs Oregon agency of incoming Newport action: "Something's going on," Oregon Capital Chronicle (last updated Nov. 25, 2025 1:28 PM) https://oregoncapitalchronicle.com/2025/11/25/ice-contractor-informs-oregon-agency-of-incoming-newport-action-somethings-going-on/; Dirk VanderHart, A federal defense contractor is seeking hundreds of coastal Oregon hotel rooms, city of Newport says, OPB (Nov. 25, 2025 6:28 PM), https://www.opb.org/article/2025/11/25/federal-defense-contractor-hotel-rooms-newport/; Taylor Giorno & Jackie Llanos, ICE Wants to Build an Oregon Detention Facility. Contractors Say Construction Plans Are Alarming., NOTUS (last updated Dec. 10, 2025 10:25 AM), https://www.notus.org/immigration/ice-oregon-detention-facility-detainees-coast-guard; Dirk VanderHart, Oregon asks judge to block potential ICE detention center in Newport, OPB (Dec. 19, 2025 7:41 PM), https://www.opb.org/article/2025/12/19/oregon-block-potential-ice-newport/; Newport files lawsuit to prevent federal government from using Coast Guard property for detention center, Lincoln Chronicle (Dec. 23, 2025), https://lincolnchronicle.org/newport-files-lawsuit-to-prevent-federal-government-from-using-coast-guard-property-for-detention-center/.

[4] See, e.g., Letter from Sen. Ron Wyden et al., to DHS Secretary Kristi Noem 1 (Nov. 12, 2025), https://www.wyden.senate.gov/imo/media/doc/letter_to_dhs_re_coast_guard_and_ice_activities_in_newport_111225.pdf.; Letter from Sen. Jeffrey A. Merkley et al., to DHS Secretary Kristi Noem and Acting Director of ICE Todd M. Lyons 1 (Dec. 16, 2025), https://www.merkley.senate.gov/wp-content/uploads/Letter-to-DHS-re.-ICE-Facility-in-Oregon.pdf; Statement from Newport Mayor Jan Kaplan (Nov. 10, 2025), https://www.newportoregon.gov/dept/adm/media/Nov_11-City_of_Newport_Statement_on_Potential_DHS_Facility.pdf.

3

Exhibit L - Page 14 of 16



Rachel Landry <rachel@innovationlawlab.org>

## FOIA Request Acknowledgment - DOI-2026-003238

1 message

**IOS-no-reply-dfo** <no-reply-dfo@sol.doi.gov>                                    Fri, Jun 26, 2026 at 11:13 AM
Reply-To: IOS-no-reply-dfo <no-reply-dfo@sol.doi.gov>
To: "rachel@innovationlawlab.org" <rachel@innovationlawlab.org>

Dear Rachel Landry,

The United States Fish and Wildlife Service (FWS) Freedom of Information Act (FOIA) office received your request, dated January 15, 2026, and assigned it tracking number DOI-2026-001394. Please cite this number in any future communications with our office regarding your request for:

"Innovation Law Lab requests records related to the U.S. Immigration and Customs Enforcement ("ICE") project to construct or transform facilities for the purposes of overnight immigration detention in the state of Oregon (hereinafter, the "Oregon Detention Project") from February 1, 2025 through the date of fulfillment of this request. (Date Range for Record Search: From 02/01/2025 To 01/15/2026)"

Expedited Process Request

You have asked for expedited processing of your FOIA request. The Department's FOIA regulations state that a bureau will provide expedited processing when a requester demonstrates a compelling need for the records by explaining in detail how the request meets one or both of the criteria below and certifying the explanation is true and correct to the best of the requester's knowledge and belief. The two criteria are as follows:

• Failure to expedite the request could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

• There is an urgency to inform the public about an actual or alleged government activity and the request is made by a person primarily engaged in disseminating information. (The requested information must be the type of information that has particular value that will be lost if not disseminated quickly; this ordinarily refers to a breaking news story that concerns a matter of public exigency. Information of historical interest only or information sought for litigation or commercial activities would not qualify, nor would a news media deadline unrelated to breaking news.) 43 C.F.R § 2.20.

Your request does not contain enough evidence to support either of these criteria because it does not show evidence that it poses an imminent threat to life and does not show that the information has a particular value that will be lost if not disseminated quickly. Your request for expedited processing therefore has been denied.

Multitrack Processing

We use Multitrack Processing to process FOIA requests. The Simple track is for requests that would generally take one to five workdays to process. The Normal track is for requests that would generally take six to twenty workdays to process. The Complex track is for requests that would generally take twenty-one to sixty workdays to process. The Extraordinary track is for requests that would generally take more than sixty workdays to process. The Expedited track is for requests that have been granted expedited processing, which are processed as soon as practicable. Within each track, requests are usually processed on a first-in, first-out basis. Your request falls into the Complex processing track. There are 400+ requests pending ahead of yours in this processing track. Presuming that our current FOIA capacity and burden remain constant, we expect that we will dispatch a determination to you by September 21, 2026.

We apologize for this delay in finalizing our decision. You may narrow the scope of your request to obtain quicker processing in your currently assigned track or move the request into a different track (which may have the effect of having it processed more quickly). You also may agree to an alternative time period for processing by communicating with us. If after contacting us at fwhq_foia@fws.gov, you need further information or assistance with your request, you may wish to seek dispute resolution services from the Department's FOIA Public Liaison by email at doifoiapublicliaison@sol.doi.gov.

You may contact us at fwhq_foia@fws.gov for assistance with your request. If after contacting us, you need further information or assistance with your request, you may wish to seek dispute resolution services from the Department's FOIA Public Liaison by email at doifoiapublicliaison@sol.doi.gov.

If you need further information or assistance after contacting the Department's FOIA Public Liaison, you may wish to seek dispute resolution services from the Office of Government Information Services (OGIS). The 2007 FOIA amendments created the OGIS to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. You may contact OGIS in any of the following ways:

Office of Government Information Services

National Archives and Records Administration

8601 Adelphi Road - OGIS

College Park, MD 20740-6001

E-mail: ogis@nara.gov

Web: https://www.archives.gov/ogis

Telephone: 202-741-5770

Toll-free: 1-877-684-6448

Please note that using OGIS services does not affect the timing of filing an appeal with the Department's FOIA & Privacy Act Appeals Officer.

You may file an appeal to the Department's FOIA/Privacy Act Appeals Officer regarding this response. If you choose to appeal, the FOIA/Privacy Act Appeals Officer must receive your FOIA appeal no later than 90 workdays from the date of this communication. If you choose to appeal the expedited processing denial, the FOIA/Privacy Act Appeals Officer must receive your FOIA appeal as soon as possible after this communication. Any appeals arriving or delivered after 5 p.m. Eastern Time, Monday through Friday, will be deemed received on the next workday.

Your appeal must be made in writing. You may submit your appeal and accompanying materials to the FOIA/Privacy Act Appeals Officer by mail, courier service, fax, or email. All communications concerning your appeal should be clearly marked with the words: "FREEDOM OF INFORMATION APPEAL." You must include an explanation of why you believe this response is in error. You must also include with your appeal copies of all correspondence between you and FWS concerning your FOIA request, including your original FOIA request and this response. Failure to include with your appeal all correspondence between you and FWS will result in the Department's rejection of your appeal, unless the FOIA/Privacy Act Appeals Officer determines (in the FOIA/Privacy Act Appeals Officer's sole discretion) that good cause exists to accept the defective appeal.

**Exhibit L - Page 15 of 16**

Please include your name and daytime telephone number (or the name and telephone number of an appropriate contact), email address and fax number (if available) in case the FOIA/Privacy Act Appeals Officer needs additional information or clarification of your appeal.

DOI FOIA/Privacy Act Appeals Office Contact Information

Department of the Interior

Office of the Solicitor

1849 C Street, N.W.

MS-6556 MIB

Washington, DC 20240

Attn: FOIA/Privacy Act Appeals Office

Telephone: (202) 208-5339

Fax: (202) 208-6677

Email: FOIA.Appeals@sol.doi.gov

If you have any questions, please don't hesitate to contact us at fwhq_foia@fws.gov.

Do not hesitate to contact us with any questions.

Exhibit L - Page 16 of 16